**NATIONAL ADVERTISING COMPANY, a Corporation, Appellant (Defendant),**

**v.**

**WILSON AUTO PARTS, INC., a Corporation, Appellee (Plaintiff).**

No. 49A02–9006–CV–319 [1].

Court of Appeals of Indiana, Fifth District.

April 25, 1991.

1. This case was reassigned to this office on    January 2, 1991.

Wilson S. Stober and Andrew Z. Soshnick, Baker & Daniels, Indianapolis, for appellant.

Daniel F. Cummings, Indianapolis, for appellee.

RUCKER, Judge.

This litigation arises out of a contract for the lease of billboard advertising space. The lessee sued for breach of contract and sought punitive damages as a consequence of lessor removing the billboard on which the advertising appeared. The trial court, sitting without a jury, found in favor of lessee but denied punitive damages. Lessor prosecutes this appeal challenging the award of compensatory damages and lessee cross appeals complaining of the denial of punitive damages. We are called upon to determine whether the trial court erred in its computation of compensatory damages and erred in its denial of punitive damages. Finding no error, we affirm.

### I.

In April 1985, Wilson Auto Parts, Inc., (Wilson) executed a written agreement with National Advertising Company (National) for advertising space on one of its outdoor billboards. The agreement set forth: the size of the billboard (12 feet by 6 feet), the unit charge ($375.00 per month), and the length of the lease (3 years).

Eighteen months before the lease expired, National removed the billboard on which Wilson's advertisement appeared and replaced the billboard with a larger one. Wilson was not notified in advance that its advertisement would be removed or that the billboard would be replaced. Shortly

thereafter, National leased the larger billboard space to another advertiser (Cellular One) at a unit price of $1,590.00 per month for a period of one year.

After removing Wilson's advertisement, but before contracting with Cellular One, National advised Wilson the larger billboard was available, but at a unit price higher than that for which Wilson had contracted. Wilson rejected the offer insisting that National honor the terms of the original agreement. National offered Wilson another location for the placement of the advertisement but Wilson rejected the offer insisting the location of its advertising was unique and another location would be unsatisfactory. National also offered to place Wilson's advertisement on the larger billboard for the original contract price of $375.00 per month, but after the expiration of Cellular One's contract.

The case began as a jury trial, but due to the illness of Wilson's counsel the court declared a mistrial and by agreement of the parties the cause was tried to the court without a jury. The court issued findings of fact and conclusions of law as follows:

1. This Court has jurisdiction over the parties and of the subject matter.

2. Plaintiff is a corporation dealing in automobile parts and National Advertising Company is a corporation which sells advertising by way of outdoor billboards.

3. April 30, 1985, National and Wilson executed a contract providing that National would furnish, for the sum of $375.00 per month, a 12′ × 36′ billboard displaying Wilson's advertisement of its retail outlets in consideration of the payment by Wilson to National of $375.00 per month for a term of 36 months, beginning May 1, 1985, and terminating April 30, 1988.

4. On or about November 1, 1986, National removed and tore down the 12′ × 36′ billboard displaying Wilson's advertisement. Over the next two months, National replaced the 12′ × 36′ billboard with a 14′ × 48′ billboard at the same location of the original 12′ × 36′ billboard.

5. Replacement of said billboard was done without the permission of or communicating with Wilson. On learning of the removal of his 12′ × 36′ billboard, John Wilson, President of Wilson Auto Parts, Inc., complained early in November, 1986, to National Advertising about the removal of the Wilson sign and advertisement.

6. The court finds that Wilson contracted for, and was entitled to use for the term of the contract, the space provided in Defendant's sign.

7. The court finds National rented the new sign at Plaintiff's location for one year beginning about February 9, 1987, for $1,590.00 being a loss of bargain to the Plaintiff in the amount of $1,215.00 per month.

8. National has presented no facts to excuse its willful breach of contract.

9. On and after January 12, 1987, the Defendant rented said sign space to another advertiser with full knowledge that it had breached its contract with Plaintiff and that it continued to breach its contract by negotiating a rental of said space over the objections and complaints of Plaintiff.

10. Plaintiff had a property right in National's billboard for the period of its lease with the Defendant, which property right was taken and converted by the Defendant.

11. The Plaintiff suffered a loss of bargain for 18 months remaining on its contract from November, 1986, through April, 1988, inclusive, in the total sum of $21,870.00.

## CONCLUSIONS OF LAW

The Court, having specially found the facts heretofore set forth, now concludes as follows:

1. The Court has jurisdiction of both the parties and the subject matter.

2. The law is with the Plaintiff and against the Defendant.

3. The Court concludes that the Plaintiff's compensatory damage resulting from the Defendant's breach is the sum of $1,215.00 per month for the 18 months

remaining on Plaintiff's contract from November 1, 1986, until April 30, 1988.

4. The Court concludes that Plaintiff is entitled to an award of compensatory damages for the loss of its bargain for the 18 months remaining on its contract.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by this Court that the Plaintiff have, and it is hereby awarded, judgment for compensatory damages in the amount of $21,870.00. Cost are assessed against the Defendant.

■ Since the trial court has entered findings of fact and conclusions of law pursuant to Trial Rule 52, we will apply a two-tier standard of review: first, we will determine whether the evidence supports the findings; second, we will determine whether the findings support the judgment. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, that the record contains no facts or inferences supporting them. *Keystone Square v. Marsh Supermarkets, Inc.* (1984), Ind.App., 459 N.E.2d 420, 422. We will not reverse unless the finding of the trial court was clearly against the logic and effect of the facts, or reasonable, probable deductions to be drawn therefrom. *Eyler v. Eyler* (1986), Ind., 492 N.E.2d 1071.

## II.

National argues that Wilson was not entitled to an award of compensatory damages because it suffered no actual loss. National takes the position that in a breach of contract action there are essentially two methods of establishing damages: (1) lost profits, and (2) benefit of the bargain.

As to lost profits, National correctly asserts the record contains no evidence Wilson lost any revenue because of National's breach of contract. As to benefit of the bargain, National maintains the proper computation is the amount by which the market value of the 12′ × 36′ sign for the unexpired term was exceeded by the amount Wilson was obligated to pay under the contract for the 12′ × 36′ sign. National contends that by stipulation of the parties the monthly fair market value of the

sign was $375.00, which was precisely the monthly amount that Wilson was required to pay under the contract and hence under the "benefit of the bargain" standard Wilson is not entitled to recover damages.

■ National's argument is fatally flawed. The record reveals the parties stipulated:

The monthly rental value of the 12′ × 36′ advertising billboard was *375.00 on April 30, 1985.* The monthly rental value of the 14′ × 48′ monopole billboard was $1,590.00 in late 1986.

(Emphasis added.) The parties' stipulation focused on the monthly rental value of the billboard at the time the contract was executed. There was no stipulation concerning the monthly rental value of the 12′ × 36′ sign in November, 1986, which was at or near the time of the contract's breach. There was, however, evidence in the record from which the trial court could have determined its value.

We first observe that Wilson not only contracted for the use of a 12′ × 36′ billboard advertising space, but he also contracted for that space at a specific location, namely: the east side of 45th and North Keystone, facing north. The location of the billboard itself has intrinsic value independent of the actual size of the billboard. Hence, while it is true that a newer and larger sign was placed on the east side of 45th and North Keystone, facing north, we cannot conclude that the value of the advertising space on the smaller sign was substantially different from the value of the advertising space on the larger sign.

The trial court found, and there is no dispute, that National rented advertising space on the newer sign for $1,590.00 per month. The record reveals National offered Wilson advertising space on the newer sign at the rate of $375.00 per month. The record further reveals other billboards in the immediate vicinity were renting at a price of $1,750.00 per month. The evidence was sufficient for the trial court to conclude that the value of the advertising space at the location of the billboard was

$1,590.00 per month at the time National breached its contract with Wilson.

◼ A damage award does not require any specific degree of certainty, so long as the amount awarded is supported by the evidence and is not based upon speculation or conjecture. *Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433. A party who suffers from a breach of contract is entitled to recover the benefit of his bargain. *Indiana Tri–City Plaza Bowl v. Glueck's Estate* (1981), Ind.App., 422 N.E.2d 670. We hold that when a party breaches a contract to provide advertising space, the nonbreaching party's benefit of bargain is measured by the difference between the fair market value of the advertising space before the loss and the fair market value at the time of the loss.

In the case before us, the trial court awarded compensatory damages to Wilson in the amount of $21,870.00. The award was calculated by measuring the difference between the fair market value of the advertising space before the loss and the fair market value at the time of loss. This amount is supported by the evidence and is not based upon speculation or conjecture. The trial court did not err in its computation of damages.

### III.

National next contends the trial court erred in failing to include in its judgment any consideration of Wilson's failure to mitigate damages. National argues that Wilson made no effort to reduce or mitigate its losses and therefore is barred from recovery.

◼ We agree with National that as a general rule a nonbreaching party must mitigate damages. *Indiana Industries, Inc. v. Wedge Products* (1982), Ind.App., 430 N.E.2d 419. However, this general rule is not without exception or limitation. The breaching party has the burden of proving that the nonbreaching party has failed to use reasonable diligence to mitigate damages. *Callander v. Sheridan* (1989), Ind.App., 546 N.E.2d 850, *reh. den.*

◼ The record reveals National offered Wilson advertising space on other of its billboard signs at different locations throughout the city for the same monthly rental Wilson was paying on its original contract. National also offered to place Wilson's advertisement on the 14′ × 48′ billboard once the Cellular One contract had expired which would have been nearly a year after the offer was made. Wilson declined National's offers. John Wilson, the president of Wilson Auto Parts, Inc., testified that the location of the 12′ × 36′ sign was unique; the sign was in close proximity to his business; it could be seen by traffic from at least two different directions; and the advertisement distinguished Wilson from his competitors whose businesses were located in the immediate area. The record before us also shows that John Wilson did seek alternative advertising from at least one other outdoor advertising sign company, which had a billboard approximately one hundred and fifty yards from his original sign; however, the monthly rental at $1,750.00 was cost prohibitive. (*Record* at 446–449).

On the record before us, it is clear that National did not carry its burden of proving Wilson failed to use reasonable diligence to mitigate damages. Moreover, because of the unique location of this particular sign, Wilson was not required to obtain advertising space at another location. *Maddox v. Yocum* (1944), 114 Ind.App. 390, 52 N.E.2d 636. Nor was Wilson obligated to wait for a year in order to avail itself of the benefit of the use of the sign at the location for which it had contracted.

The trial court did not err in making no finding concerning mitigation of damages.

### IV.

On cross-appeal, Wilson contends the trial court erred in failing to award punitive damages. Wilson argues that National knowingly, willfully and wrongfully removed its advertisement and, in spite of Wilson's objections, National rented the advertising space to another advertiser. Wilson contends the trial court's Findings 5

through 10 support an award of punitive damages.

■ Punitive damages are generally not recoverable in breach of contract actions absent clear and convincing evidence that the breaching party's conduct was accompanied by malice, fraud, gross negligence or oppressive conduct; and that the breaching party's acts were inconsistent with the hypothesis that the tortious conduct was the result of mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other noniniquitous human failings. *Arlington State Bank v. Colvin* (1989), Ind.App., 545 N.E.2d 572 *reh. den.; World Productions, Inc. v. Capital Improvement Board of Managers of Marion County* (1987), Ind. App., 514 N.E.2d 634 *reh. den., trans. den.*

■ National's removal of the sign was the result, in part at least, of internal miscommunication between National's employ- ees. Consequently, the removal occurred without permission or advance notice to Wilson. There was no clear and convincing evidence that National's conduct was accompanied by malice, fraud, gross negligence or oppressive conduct. There was no error in the trial court's failure to award Wilson punitive damages.

The trial court's findings and conclusions are not clearly erroneous. We therefore affirm.

BARTEAU and ROBERTSON, JJ., concur.