TURBINES, INC., Appellant–Plaintiff,

v.

Rex Eugene THOMPSON,
Appellee–Defendant.

No. 84A05–9603–CV–114.

Court of Appeals of Indiana.

Sept. 23, 1997.

Myrl O. Wilkinson, Anthony R. Jost, Wilkinson, Goeller, Modesitt, Wilkinson and Drummy, Terre Haute, for Appellant–Plaintiff.

Stephen L. Trueblood, James B. Organ, Trueblood Law Firm, Terre Haute, for Appellee–Defendant.

## OPINION

RUCKER, Judge.

Appellant–Plaintiff Turbines, Inc. (hereafter referred to as "Company") sued Rex Thompson for breach of a covenant not to compete. After a bench trial the trial court

awarded damages in Company's favor. Company now appeals contending the damage award is inadequate. We affirm.

Company repairs, rebuilds, and sells turbine engines for crop-duster airplanes. Thompson, a highly skilled engine builder, was employed by Company for approximately nine years. Because of a decline in business Company terminated Thompson's employment in March 1994. Upon termination Company paid Thompson $12,000.00 in compensation. In return Thompson signed a written agreement prohibiting him, for a period of one year, from entering a business in competition with Company or soliciting business from Company's existing or former customers. The agreement did not contain a liquidated damages clause. After leaving Company Thompson began his own engine repair business. He also began soliciting Company's former customers. As a result Company filed suit. After a bench trial the trial court determined that Thompson had breached the non-competition agreement and entered judgment in Company's favor for $19,623.32. At Thompson's request the trial court entered specific findings and conclusions in support of its judgment. This appeal ensued in due course. Additional facts are set forth below where relevant.

Company contends the damage award is insufficient as a matter of law. Pointing to evidence of record that shows Thompson received gross profits in excess of one hundred thousand dollars during the period covered by the non-competition agreement, Company argues a proper award of damages should reflect that amount.

■ Upon review of a judgment supported by special findings and conclusions this court applies a two-tiered standard: first, we determine whether the evidence supports the findings; second we determine whether the findings support the judgment. The trial court's findings and conclusions will be set aside only if they are clearly erroneous. *W & W Equipment Co., Inc. v. Mink*, 568 N.E.2d 564 (Ind.Ct.App.1991) *trans. denied.* Findings of fact are clearly erroneous if the record lacks any facts or reasonable inferences to support them. *DeHaan v. DeHaan*, 572 N.E.2d 1315 (Ind.Ct.App.1991),

*trans. denied.* In determining whether the special findings and judgment are clearly erroneous, we will not reweigh the evidence or judge witness credibility. *Id.* Rather, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. *Citizens State Bank v. Peoples Bank*, 475 N.E.2d 324 (Ind.Ct.App.1985). Also, where, as here, a party has the burden of proof at trial and an adverse judgment is entered, if the party prosecutes an appeal, he does so from a negative judgment. When appealing a negative judgment the party must show that the evidence points unerringly to a conclusion different from that reached by the trial court. *Aetna Cas. & Sur. Co. v. Crafton*, 551 N.E.2d 893 (Ind.Ct.App.1990).

The record shows that Thompson solicited business from four of Company's customers, namely: Crowley–Ridge Aviation, Air Force Turbine Services, Ohio Turbine Center, Inc., and Turbine Power, Inc. As to each customer the trial court determined the amount of lost profits, if any, Company suffered as a result of Thompson's conduct. Except for Crowley Ridge Aviation, Company challenges the trial court's determination. We address each company in turn.

### Air Force Turbine Services

■ The trial court found that Air Force Turbine Services sent an air duct to Thompson that was junk. Accordingly the trial court found that Company suffered no lost profit. Company does not dispute that the air duct was junk and also acknowledges that Thompson was never paid for inspecting it. Rather Company complains that the air duct was and still is in the possession of Thompson. Company then concludes that it is either entitled to the $500.00 "average cost" of the duct or its $1,000.00 "average cost of repair." *Brief of Appellant* at 22. Company cites no authority or this novel proposition and we know of none. In order to show lost profits from the air duct, Company would have to demonstrate that but for Thompson, Company not only would have received the item but also would have either repaired or kept it as well. Company has pointed to no evidence of record in that regard. Absent such evidence Company cannot complain of lost profits.

## Ohio Turbine, Inc.

■ The trial court found that Thompson received profits from Ohio Turbine, Inc. in the amount of $6,204.09. However, the trial court also found that Ohio Turbine would not have placed business with Company during the one year period covered by the agreement. As a result the trial court assessed no damages ruling that any loss on Company's part was conjectural. Company contests the trial court's finding arguing that "the proper award of damages would be gross fees/receipts received by or on behalf of Thompson from Ohio Turbine Center." *Brief of Appellant* at 21. Company's argument is misplaced. The question here is not whether Thompson received fees or receipts from Ohio Turbine. Rather, the question is whether those fees or receipts would have gone to Company if Thompson had not solicited the business. The record shows the disputed funds were paid to Thompson for certain welding work he performed for Ohio Turbine. Robert Ruhe, an official of Ohio Turbine, testified that he had been a customer of Company in the 1970's, but the relationship ended after a disagreement that led to litigation. He continued as follows:

Q. Bob are you testifying that if Rex Thompson had not done this welding for you that you definitely would have given that work to Jim Mills[1] as opposed to anybody else?

A. At that time I would say that Jim and I were still quite adversarial and that he wouldn't have gotten any of it.

*R.* at 683. The forgoing testimony supports the trial court's finding that Ohio Turbine Center would not have placed the welding business with Company. Consequently, profits Thompson received from Ohio Turbine Center would not have gone to Company in any event. Because the trial court's findings are supported by the evidence they are not clearly erroneous, and therefore will not be set aside. *W & W Equipment Co.,* supra.

## Turbine Power, Inc.

The trial court found that Company's revenues from Turbine Power, Inc. declined between 1994 and 1995. Specifically the trial court found that Turbine Power, Inc. placed $25,723.36 in business with Company in 1993. The amount declined in 1994 to $508.00 and declined in 1995 to $16,725.94. Noting that Company's receipts fluctuated from year to year and often by great amounts, even from the same customer, the trial court determined that it "[could] not be sure whether the decline in revenues was merely cyclical or was the product of Thompson's competition." *R.* at 207–08. Concluding that only a percentage of the decline was attributable to Thompson's competition, the trial court calculated Company's revenue loss at $7,150.26.

■ Company contends the trial court erred in measuring damages based on its loss in revenue as opposed to Thompson's gross receipts. Also, Company challenges the trial court's method of calculation. Absent an enforceable liquidated damages clause, lost profits are a proper measure of damages in actions involving covenants not to compete. *Hahn v. Drees, Perugini & Co.,* 581 N.E.2d 457 (Ind.Ct.App.1991); *see also* 25 C.J.S. Damages § 79(d). ("The measure of damages for breach of a contract . . . restraining competition is the loss of profits sustained by the injured party."). Here, Company acknowledges that lost profits are an appropriate measure of damages. It suggests however that lost profits can be measured only by the amount of gross receipts Thompson received from Turbine Power. We disagree. First in awarding lost profits, net profits, and not gross profits, are generally the proper measure of recovery. *Ashland Pipeline Co. v. Indiana Bell Tel. Co., Inc.,* 505 N.E.2d 483 (Ind.Ct.App.1987) *reh'g denied.* Thus to the extent that gross receipts in this case are the equivalent of gross profits they are an inappropriate measure of recovery. Second, Thompson's gross receipts, while reflecting a gain to Thompson, does not necessarily reflect damage to Company. Rather, as with Ohio Turbine, the question here is whether

---

1. The record shows that James Mills is the founder and President of Turbines, Inc. The record also shows that Robert Ruhe is acquain-

ted with both James Mills and Appellee Rex Thompson.

the revenues Thompson received from Turbine Power would have gone to Company but for Thompson's interference. Company contends that its lost profits ranged from $134,376.29 to $255,333.89. These figures apparently represent the gross receipts Thompson received from Turbine Power, Inc. Company points to no evidence of record suggesting that it has ever conducted the volume of business for Turbine Power necessary to generate the forgoing revenue. Nor does Company point to any evidence of record suggesting that it would have conducted that volume of business for Turbine Power but for Thompson soliciting the business. In essence Company failed to demonstrate that its lost profits were in any way related to the gross receipts Thompson received from Turbine Power, Inc. To the contrary, Company introduced into evidence Plaintiff's Exhibit 25 showing the revenue it received from Turbine Power, Inc., from 1993 to 1995. R. at 920. The amounts and their decline were reflected in the trial court's finding. Again, because the trial court's findings are supported by the evidence they are not clearly erroneous, and therefore will not be set aside. W & W Equipment Co., supra.

■■■ Company's argument challenging the trial court's method of calculation also fails. The trial court first found that the evidence was unclear whether Company's decline in revenue from Turbine Power was due to the cyclical nature of the business or from Thompson's competition. Next, the trial court found that three fourths of Company's decline in revenue from 1993 to 1994 and one fourth of Company's decline in revenue from 1994 to 1995 [2] were the result of Thompson's competition and calculated an award accordingly. A damage award does not require any specific degree of certainty, so long as the amount awarded is supported by the evidence and is not based on speculation or conjecture. National Advertising Co. v. Wilson Auto Parts, Inc., 569 N.E.2d 997 (Ind.Ct.App.1991). Even where the amount

is uncertain, lost profits as an element of damages still may be awarded if the evidence is sufficient for the fact-finder to make a fair and reasonable determination. Farm Bureau Mut. Ins. Co. v. Dercach, 450 N.E.2d 537 (Ind.Ct.App.1983) reh'g denied. In this case the record is clear that the amount of Company's lost profits due to Thompson's competition was uncertain at best.[3] The record shows that Company's business was cyclical, and revenues Company received from different customers including Turbine Power varied significantly from year to year. Although the record supports the conclusion that Company suffered some amount of lost profits, Company failed to carry its burden of demonstrating the loss attributable to Thompson's competition versus the loss attributable to the cyclical nature of its business. By attributing a fractional portion of lost profits to Thompson's competition, the trial court acted well within the evidence. We find no error on this issue.

■■■ Finally Company complains that in addition to lost profits it was also entitled to the loss of value to its business as an element of damage. The trial court entered no findings in that regard and Company asserts error. As we have already indicated lost profits are a proper measure of damages in actions involving covenants not to compete. Hahn, supra. To support its argument that it is entitled to loss in business value in addition to lost profits Company cites Lawrence v. Cain, 144 Ind.App. 210, 245 N.E.2d 663 (1969). However Lawrence stands for no such proposition. In that case plaintiff sought injunctive relief and damages for breach of a covenant not to compete. The trial court entered damages against the breaching party and on appeal we reversed holding that the non-breaching party failed to prove damages. In so doing we noted:

In our opinion it was also incumbent upon appellant to show that the good will of the

2. The record actually shows "[]one-fourth (¼) of the decline from 1993 to 1995...." R. at 208 (emphasis added). The reference to 1993 is obviously a typographical error.

3. In addition to Plaintiff's Exhibit 25 from which the trial court determined the amount of Company's lost profits, Company also suggested various other amounts allegedly reflecting its lost profits, namely: $134,376.29, $148,000.00, $153,176.58, and $255,333.89.

business had been impaired or destroyed, *or* that there had been a loss in the value of the property, *or* a loss of profits by reason of appellees' breach of the contract.

*Id.* at 668 (emphasis added) *quoting Gewartowski v. Tomal et al.,* 125 Ind.App. 481, 123 N.E.2d 580 (1955). Clearly the various measures of damage in *Lawrence* are set forth in the alternative. Contrary to Company's argument it was not entitled to loss in value as well as lost profits. The trial court did not err in failing to enter findings on this issue.

Judgment affirmed.

BARTEAU and KIRSCH, JJ., concur.