Gary **CROWE** and Lisa
Crowe, Appellants,

v.

**T.J. BOOFTER, Appellee.**

No. 22A01–0210–CV–394.

Court of Appeals of Indiana.

June 27, 2003.

Stephen W. Voelker, Voelker Law Office, Jeffersonville, IN, Attorney for Appellant.

John A. Kraft, Young, Lind, Endres & Kraft, New Albany, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Gary Crowe and Lisa Crowe (the "Crowes") bring this appeal from the trial court's order granting summary judgment to Thomas J. Boofter, in the Crowes' action alleging the negligent performance of a survey.

We affirm.

### ISSUE

Whether the trial court erroneously granted summary judgment to Boofter.

### FACTS

On September 15, 1997, Boofter performed a Surveyor Location Report ("SLR") at the request of the Crowes' title insurer in conjunction with the Crowes' purchase of property. (App. 10). The SLR contained the following disclaimer:

> This report is designed for use by a title insurance company with a residential loan policy. No corner markers were set and the location data shown is based on limited accuracy measurements. No liability is assumed by T.J. Boofter for any use of the data for construction of new improvements or fences.

(App. 10).

On September 30, 1997, the Crowes signed a document entitled "Survey Receipt and Acknowledgement with Hold Harmless." (App. 24). In pertinent part, the document provided, "I hereby certify that I have received a copy of the Survey by Thomas J. Boofter dated 9–15–97 and am aware of and accept the encroach-

ments, easements, limitations and/or conditions thereon." (App. 24).

The Crowes relied upon the SLR performed by Boofter to position a pole barn they built on the property.[1] The pole barn encroached approximately 20 feet onto a tract of land owned by Didelot Properties, L.L.C. In a letter dated May 22, 2000, Didelot informed the Crowes that

> [t]he members noticed your new pole barn and suspected that it encroached upon their real estate. Based upon this suspicion, Didelot Properties, L.L.C. employed David J. Ruckman Company, licensed surveyors, to do an accurate survey of their real estate. I am enclosing a copy of the survey, which shows your pole barn to be encroaching 16.8 feet on the west side and 19.5 feet on the east side of the building.

(App. 37).[2]

On October 19, 2001, the Crowes filed their "Claim for Surveyor's Negligence" requesting compensation from Boofter because they were required to purchase a strip of land from Didelot. (App. 9). Boofter filed an answer asserting several defenses including issues with regard to the disclaimer on the SLR and expiration of the statute of limitations. Also, Boofter asserted that the complaint was "baseless, frivolous and without merit and should entitle" him to attorney's fees and costs. (App. 12).

Both the Crowes and Boofter filed motions for summary judgment. A hearing was held on the motions. The hearing consisted only of argument by counsel. Counsel for the Crowes asserted that Gary Crowe was the builder of the pole barn. (Tr. 14). On September 17, the trial court entered an order granting summary judg-

ment to Boofter. The trial court did not order payment of attorney's fees.

## DECISION

When reviewing a determination on summary judgment, we apply the same standard employed by the trial court to evaluate whether the motion should be granted. *Estate of Spry v. Greg & Ken, Inc.,* 749 N.E.2d 1269, 1272 (Ind.Ct.App. 2001). Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Warner Trucking, Inc. v. Carolina Casualty Ins. Co.,* 686 N.E.2d 102, 104 (Ind. 1997); Ind. Trial Rule 56(C). Where the facts material to the proceedings are not in dispute, this court determines whether the trial court correctly applied the law to the facts. *Grant County Comm'rs v. Cotton,* 677 N.E.2d 1103, 1104 (Ind.Ct.App.1997), trans. denied. Summary judgment terminates litigation about which there can be no factual dispute and which may be determined as a matter of law. *Merrill v. Knauf Fiber Glass GmbH,* 771 N.E.2d 1258, 1264 (Ind.Ct.App.2002), trans. *denied.*

The Crowes raise a variety of bases for reversal of the summary judgment in favor of Boofter; however, the terms of the disclaimer as stated on the SLR and the acknowledgement signed by the Crowes are dispositive. The construction of written contract terms is a matter particularly suited for summary judgment. *Indiana Dept. of Transp. v. Shelly & Sands,* 756 N.E.2d 1063, 1069 (Ind.Ct.App. 2001). Whether contract terms are ambigu-

---

1. The record of proceedings does not contain evidence of the dates the construction of the pole barn was started or completed.

2. The survey authorized by Didelot Properties was not presented in the summary judgment materials.

ous is a question of law for the determination of the court. *Id.* Further, a contract is not considered ambiguous merely because a controversy exists; rather, ambiguity will be found when a contract is susceptible to more than one interpretation as measured by the standard of whether reasonable minds could differ as to its meaning. *Id.* at 1069–70.

Here, the SLR contained an exculpatory clause. As set out above in FACTS, the clause stated:

> This report is designed for use by a title insurance company with a residential loan policy. No corner markers were set and the location data shown is based on limited accuracy measurements. No liability is assumed by T.J. Boofter for any use of the data for construction of new improvements or fences.

(App. 10). The Crowes then signed an acknowledgement that they were "aware of and accept the encroachments, easements, limitations and/or conditions" as provided in the SLR. (App. 24).

■ "Courts in Indiana recognize exculpatory clauses in contracts and presume that the contracts represent the freely bargained agreement of the parties." *Indiana Dept. of Transp.,* 756 N.E.2d at 1072. Although some exceptions exist for unconscionable contracts, contracts affecting public interest, or where the parties have unequal bargaining power, contracts containing exculpatory clauses are not prohibited by public policy. *Id.*

■ Here, the SLR plainly and unambiguously states that it cannot be relied upon for placement of fences or improvements. The Crowes acknowledge that they did so. At the time the Crowes signed the acknowledgement and receipt for the SLR on September 30, 1997, they "accept[ed] the encroachments, easements, limitations and/or conditions" set out within the SLR, including that 1) "no corner markers were set and the location data shown is based on limited accuracy measurements"; and 2) none of the data within the SLR could be used "for construction of new improvements or fences." (App. 23, 24). The exculpatory clause within the SLR, together with the Crowes' acknowledgement thereof, shielded Boofter from a claim that he negligently performed the SLR for purposes of locating the pole barn.[3] Therefore, the trial court correctly ordered summary judgment for Boofter.

Additionally, Boofter requests appellate attorney's fees. Pursuant to Indiana Appellate Rule 66(E), an appellate tribunal

> may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution.

Here, the Crowes' appeal did not rise to the level of frivolousness or apparent bad faith. Consequently, the request for an assessment of appellate attorney's fees is denied.

3. The Crowes contend, without citation to relevant authority, that a letter sent to them by Boofter in July 2000, constituted an admission of liability. However, the letter merely explained Boofter's view of the series of events that led to the improper placement of the pole barn. Although the letter acknowledged inaccuracy in the SLR of approximately 16 feet on one boundary and expressed regret therefor, Boofter reiterated that the SLR was only intended to locate the existing structures for title insurance purposes. As such, the SLR served its purpose by demonstrating that the house that was the subject of the appraisal was located well within the boundaries of the property. Consequently, we assign to the letter no legal significance that would negate the clear and unambiguous exculpatory clause within the SLR.

The judgment of the trial court is affirmed.

SULLIVAN and BAKER, JJ., concur.