**BERKEL & COMPANY CONTRACTORS, INC.,**
**Appellant–Defendant,**

v.

**PALM & ASSOCIATES, INC.,**
**Appellee–Plaintiff.**

No. 71A03–0307–CV–294.

Court of Appeals of Indiana.

Sept. 8, 2004.

Sean E. Kenyon, Robert J. Konopa, Konopa Reagan & Kenyon, South Bend, IN, Attorneys for Appellant.

Robert J. Palmer, Jeffery A. Johnson, Richard F. Nugent, Jr., May Oberfell & Lorber, South Bend, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Berkel & Company Contractors, Inc. ("Berkel") appeals the trial court's grant of partial summary judgment to Palm & Associates, Inc. ("Palm") on its breach of contract claim, the trial court's denial of Berkel's cross-motion for summary judgment, and the trial court's findings of fact and conclusions thereon awarding damages to Palm. Berkel raises three issues, which we consolidate and restate as:

I.  Whether the trial court erred by granting partial summary judgment to Palm on its breach of contract claim and by denying Berkel's cross-motion for summary judgment after it found that Berkel breached a valid contract with Palm; and

II. Whether the trial court's findings of fact and conclusions thereon awarding damages to Palm for Berkel's breach of contract were clearly erroneous.

We affirm.

The relevant facts follow. In early 2002, Berkel, as a sub-contractor, contracted with Black & Veatch Construction, Inc. ("Black & Veatch"), as the general contractor, to install approximately 800 pilings[1] for a generating plant in St. Joseph County, Indiana ("the Project") being built by Black & Veatch. Berkel contacted Palm about performing some surveying work on the Project, and on April 3, 2002, Berkel issued a purchase order to Palm.

The purchase order listed that Palm was to "[v]erify pile locations in Electronics Drawings against plan sheet dimensions prior to staking" and to "[p]repare a pre-drill staking drawing showing grid-lines, caps, piles, pile designation, with corresponding staking numbers" for a price "[n]ot to exceed $780.00[.]" Appellant's Appendix at 16. The purchase order also included a provision that Palm would supply the following:

> Field Crew—2 men full time during the course of our work[.]
>
> • Stake centers of approximately 800 auger pilings[.]
>
> • Measure as-built locations of constructed piles measurements.
>
> • Prepare as-built drawings of client specified pile groups & submit to client within 24 hours of request.
>
> There will be no charge for t[r]avel time.

Id. The terms of the purchase order called for Berkel to compensate Palm for these services at a price of $110 per hour. The purchase order further had a provision that "[m]aterials and equipment must meet standards required by state and federal regulations and any project requirement." Id.

---

1.  The installation of pilings is a process involving the drilling of a hole, up to thirty-six inches in diameter and up to 130 feet in depth. As the drill is backed out of the ground, it is replaced by concrete, which, when hardened, serves as the foundational support for various structures.

On April 11, 2002, two of Palm's employees began performance of the work listed under the purchase order and completed one and one-half hours of work. On April 15, 2002, Berkel learned that all subcontractors were required to employ union labor and told Palm that Palm would be required to use union labor on the Project. Palm told Berkel that it would talk to the local unions and that the price in the purchase order would need to be adjusted if Palm was to have a working agreement with the union. On April 19, 2002, Palm had not yet worked out an agreement with the union, and Berkel hired another surveyor to complete the work that Palm had agreed to perform. Berkel then informed Palm that it was to perform no further work under the purchase order and paid Palm for its work already completed.

Palm then filed a complaint for breach of contract against Berkel. Palm later filed a motion for partial summary judgment on its breach of contract claim, arguing that "Berkel breached its agreement to have Palm perform certain tasks and compensate Palm according to the purchase order." Appellant's Appendix at 44. Berkel filed a cross-motion for summary judgment, arguing that: (1) the purchase order did not constitute a contract; and (2) even if the purchase order was a contract, Palm breached it by refusing to use union labor. Following a hearing on the motions, the trial court granted Palm's motion for partial summary judgment and denied Berkel's cross-motion for summary judgment.

Thereafter, a bench trial was held on the issue of damages, and Berkel asserted an affirmative defense of failure to mitigate damages. Pursuant to Indiana Trial Rule 52, Berkel requested that the trial court enter findings of facts and conclusions thereon, and the trial court issued the following order:

*Findings of Fact*

\* \* \* \* \*

5. Berkel performed work on the Allegheny gas fired electrical generating plant, also known as the St. Joseph generating plant, (the Project) and contracted with Palm to undertake certain work with respect to the Project.

6. The contract between Palm and Berkel was memorialized by Purchase Order No. 03–315 dated April 3, 2002 (Contract).

7. Specifically, Berkel contracted with+ (sic) Palm to:

- Verify pile locations in Electronic Drawings against plan sheet dimensions prior to staking.

- Prepare a pre-drill staking drawing showing grid-lines, caps, piles, pile designation, with corresponding staking numbers[.]

8. Palm was to perform the activities described in finding numbered 7 for a cost not to exceed $780.

9. Palm performed the work described in finding numbered 7 and was compensated for these services as provided in the Contract.

10. Berkel contracted with Palm to perform the following tasks, as well:

Field Crew–2 men full time during the course of our work

- Stake centers of approximately 800 auger pilings[.]

- Measure as-built locations of constructed piles measurements.

- Prepare as-built drawings of client specified pile groups & submit to client within 24 hours of request.

11. Palm devoted the time of its employees, Jason Tincher and John Compton, to the performance of the Contract.

12. Palm was to be compensated at the rate of $110 per hour, per man, for

performance of the work to be performed at the Project site.

* * * * *

14. The Contract does not specify a fixed time for completion of the work, nor a fixed number of man-hours for which Palm was to be compensated.

15. The Contract was an unusually large project for surveying work, in terms of its scope and duration, and therefore a lucrative opportunity for Palm. Both Berkel and Palm recognized this fact at the time of execution of the Contract.

16. The work to have been performed by Palm under the Contract, although expansive in terms of its scope and duration, did not involve the provision of unique personal services.

17. Prior to commencement of the work set forth at finding numbered [10], above, Berkel terminated the Contract.

18. Berkel hired DLZ to perform the work that Palm was to have performed for the Project.

* * * * *

25. . . . Palm estimated it would require 520 man hours to perform the activities the Contract contemplated would be performed at the Project by Tincher and Compton.

* * * * *

27. The hourly cost to Palm of Tincher and Compton's wages and expenses, calculating the tax and other burden at fifteen percent (15%) is $28.75. The hourly cost of travel time to Palm is $.59, for a total hourly cost to Palm for Tincher and Compton's time in the field of $29.34.

* * * * *

30. After the Contract was terminated, Palm's employees Compton and Tincher worked on other accounts or projects which (sic) Palm was obligated to perform for other customers.

31. Had the Contract not been terminated, the work performed by Compton and Tincher, as described in finding numbered 30, would have been performed by Palm, nonetheless.

32. Berkel has failed to introduce evidence sufficient to show that income received by Palm for work performed by it after Berkel's breach of the Contract was received as a result of Palm being relieved from its performance of the Contract. *Albert Johann & Sons, Co. v. Echols,* 143 Ind.App. 122, 238 N.E.2d 685 (1968).

* * * * *

35. Palm's reasonable profits proven to have been earned under the Contract totals $41,368. . . .

* * * * *

*Conclusions*

A. Palm and Berkel entered into the Contract on or about April 3, 2002.

B. Palm performed the work described in finding numbered 7, above, and was compensated by Berkel for this effort in accordance with the Contract.

C. Berkel breached the Contract prior to Palm's commencement of the work described at finding number 10, above.

D. Palm suffered damages of $41,368 for net lost profits that would have been earned under the Contract for the work to have been performed on the Project site by Palm had Berkel not breached the contract.

\* \* \* \* \*

G. Berkel has not proven its affirmative defense of a failure on the part of Palm to have mitigated its damages.

Appellant's Appendix at 6–11.

## I.

■ The first issue is whether the trial court erred by granting partial summary judgment to Palm on its breach of contract claim and by denying Berkel's cross-motion for summary judgment. Our standard of review for the grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). The standard of review is not altered by cross-motions for summary judgment on the same issues. *Indiana Ins. Co. v. American Cmty. Servs., Inc.*, 718 N.E.2d 1147, 1152 (Ind.Ct.App.1999). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Mangold*, 756 N.E.2d at 973. Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.*

■ The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *Rogier v. Am. Testing and Eng'g Corp.*, 734 N.E.2d 606, 614 (Ind.Ct. App.2000), *reh'g denied, trans. denied.* Berkel argues that the trial court erred by granting partial summary judgment to Palm on its breach of contract claim because: (1) there was no contract; and (2) even if there was a contract, it was Palm, not Berkel, who breached the contract. We will address each argument in turn.

## A. Contract

■ We first review whether the purchase order constituted an enforceable contract. When construing a contract, we will not find uncertainty in the contract if a logical interpretation can find certainty. *Int'l Shoe Co. v. Lacy*, 114 Ind.App. 641, 647–648, 53 N.E.2d 636, 639 (1944). In order to be enforceable, a contract must be reasonably definite and certain in its material terms so that the intention of the parties may be ascertained. *Id.; Kokomo Veterans, Inc. v. Schick*, 439 N.E.2d 639, 644 (Ind.Ct.App.1982).

■ Berkel argues that the purchase order was an "indefinite quantities contract" and did not constitute an enforceable contract. Appellant's Brief at 8–9. An indefinite quantities contract is a "contract under which the buyer agrees to purchase and the seller agrees to supply whatever quantity of goods the buyer chooses to purchase from the seller" but it does not obligate the buyer to purchase anything from the seller. *Indiana–American Water Co., Inc. v. Town of Seelyville*, 698 N.E.2d 1255, 1259 (Ind.Ct.App.1998). "[A]n indefinite quantities contract, without at least the requirement that the buyer purchase a guaranteed minimum quantity from the seller, is illusory and unenforceable." *Id.* at 1259–1260.

Berkel argues that the following section of the purchase order renders it indefinite and unenforceable as a contract:

Field Crew—2 men full time during the course of our work[.]

- Stake centers of approximately 800 auger pilings[.]
- Measure as-built locations of constructed piles measurements.
- Prepare as-built drawings of client specified pile groups & submit to client within 24 hours of request.

There will be no charge for t[r]avel time.

Appellant's Appendix at 16. The purchase order also contained a provision that Berkel would pay Palm $110 per hour for these services. Berkel argues that the purchase order was indefinite because it did not specify the number of hours that the two-man crew would need to work and "merely outlined the labor needed for the Project and the price that would be charged for the field crew as it performed work requested by Berkel." Appellant's Brief at 9. Palm argues that the purchase order was more like a "definite quantity contract" because it called for a definite quantity of surveying services, i.e., "stake centers of approximately 800 auger pilings." Appellee's Brief at 9–15.

To support its argument, Berkel relies on *Dayhuff v. Canonie Const. Co.*, 152 Ind.App. 154, 283 N.E.2d 425 (1972). In that case, Canonie and Dayhuff entered into an agreement whereby Dayhuff agreed to haul sand to a highway construction project. *Id.* at 155, 283 N.E.2d at 426. Canonie issued Dayhuff a purchase order, which provided that Dayhuff would haul sand "as required." *Id.* The purchase order also provided that the hauling may include approximately 35,000 to 50,000 cubic yards of sand, and it also provided the price that Canonie would pay for the sand. *Id.* When Canonie entered into a similar agreement with another company, Dayhuff sued for breach of contract, alleging that the purchase order gave Dayhuff the exclusive right to haul sand for the construction project. *Id.* at 156, 283 N.E.2d at 427. The trial court granted summary judgment in favor of Canonie, and we affirmed, holding that the purchase order was not a valid contract because it was too indefinite and "the lack of [Dayhuff's] obligation to accept the offer ... defeat[ed] mutuality." *Id.* at 156–157, 283 N.E.2d at 427.

■ We conclude that *Dayhuff* is distinguishable. In *Dayhuff*, the purchase order was indefinite and limited Canonie's obligation to purchase Dayhuff's hauling services only "as required." *Dayhuff*, 152 Ind.App. at 155, 283 N.E.2d at 426. Thus, it was more like an indefinite quantities contract, which, absent the requirement that the buyer purchase a guaranteed minimum quantity from the seller, renders it unenforceable. *See Indiana–American Water*, 698 N.E.2d at 1259–1260. Here, contrary to Berkel's argument, the purchase order did not contain a limitation that Palm would perform work only as "requested" by Berkel. Rather, the language of the purchase order required Palm to provide a two-man field crew "during the course of our work" to: (1) "[s]take centers of approximately 800 auger pilings;" (2) "[m]easure as-built locations of constructed piles measurement;" and (3) "[p]repare as-built drawings of client specified pile groups & submit to client within 24 hours of request" and required Berkel to pay Palm $110 per hour for these services. Appellant's Appendix at 16. In *Dayhuff*, the indefiniteness was in the job to be performed, i.e., haul sand as required. Here, however, the purchase order was definite in the overall job to be performed, i.e., stake approximately 800 auger pilings. While there was no provision defining the number of hours necessary to perform the surveying work, the purchase order, which called for surveying services to stake approximately 800 auger pilings to be paid at a rate of $110 per hour, was reasonably definite in its terms and, thus, was a valid, enforceable contract.

## B. Breach

In the alternative, Berkel argues that if the purchase order constituted an enforceable contract, it was Palm, not Berkel, who

breached the contract. Specifically, Berkel argues that the purchase order required Palm to use union labor and that Palm breached the contract by failing to reach an agreement with a union. Berkel's argument requires us to interpret the purchase order.

Generally, construction of the terms of a written contract is a question of law and reviewed de novo. *Harrison v. Thomas,* 761 N.E.2d 816, 818 (Ind.2002), *reh'g denied.* The goal of contract interpretation is to ascertain and give effect to the parties' intent. *First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.,* 559 N.E.2d 600, 603 (Ind.1990). In interpreting a written contract, the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *Id.* Thus, we will determine the intent of the parties to a contract by the four corners of the contract. When interpreting the meaning of the words used in a contract, we must first determine if the contract is ambiguous. "A contract is not ambiguous merely because a controversy exists; rather, ambiguity will be found when a contract is susceptible to more than one interpretation as measured by the standard of whether reasonable minds could differ as to its meaning." *Crowe v. Boofter,* 790 N.E.2d 608, 611 (Ind.Ct.App. 2003). Absent ambiguity, we will give the terms of a contract their plain and ordinary meaning. *USA Life One Ins. Co. of Indiana v. Nuckolls,* 682 N.E.2d 534, 539 (Ind.1997).

On April 3, 2002, Berkel issued Palm a purchase order, which required Palm to provide surveying services that included a two-man field crew to stake approximately 800 auger pilings and required Berkel to pay Palm $110 per hour for this surveying work. The purchase order also included the following provision: "[m]aterials and equipment must meet standards required by state and federal regulations and any project requirement." Appellant's Appendix at 16. On April 11, 2002, two of Palm's employees began performance of the work listed under the purchase order and completed one and one-half hours of work. On April 15, 2002, after learning that its client, Black & Veatch, wanted the surveying company to have a working agreement with the unions, Berkel informed Palm that Palm would be required to use union labor on the Project. On April 19, 2002, Palm had not yet worked out an agreement with the union, and Berkel hired another surveyor to complete the work that Palm had agreed to perform. Berkel then informed Palm that it was to perform no further work under the purchase order and paid Palm for its work already completed.

Berkel asserts that the purchase order required Palm to use union labor. Specifically, Berkel argues that because its client required union labor be used on the Project, the purchase order provision that "[m]aterials and equipment must meet standards required by state and federal regulations and any project requirement" required Palm to use union labor. *See* Appellant's Appendix at 16. We disagree. First, the plain language of the purchase order does not require Palm to use union labor. In addition, the unambiguous language of the contract states that "materials and equipment" must meet project requirements, but it does not make any reference to "labor" meeting project requirements. *See* Appellant's Appendix at 16. In addition to the plain language of the purchase order, the record reveals that at the time Berkel contracted with Palm and issued the purchase order, there was no requirement that union labor be used. Palm had already begun performance on the work listed in the purchase

order when Berkel informed Palm that it needed to use union labor. Accordingly, because the contract did not include a provision requiring Palm to use union labor, Palm did not breach the contract by failing to reach an agreement with the union. Indeed, the trial court found that the purchase order was an enforceable contract, and there is no dispute in the facts that Berkel issued a purchase order to another company and instructed Palm to cease work on the purchase order. Thus, the trial court did not err by granting partial summary judgment to Palm and by denying Berkel's motion for summary judgment after it found that Berkel breached a valid contract with Palm.

## II.

The next issue is whether the trial court's findings of fact and conclusions thereon awarding damages to Palm for Berkel's breach of contract were clearly erroneous. After the trial court granted Palm's partial motion for summary judgment, it held a bench trial on the issue of damages. Pursuant to a motion by Berkel, the trial court issued findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52. When reviewing the trial court's findings of fact and conclusions thereon, we consider whether the evidence supports the findings and whether the findings support the judgment. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.*

The trial court entered judgment in favor of Palm, concluding that Palm suffered damages of $41,368 and that Berkel did not prove its affirmative defense of failure to mitigate damages. Berkel argues that the trial court's judgment is erroneous because Palm's damages were not foreseeable and because Palm was required to mitigate its damages because the purchase order was a personal service contract.

### A. Palm's Damages

Berkel argues that the trial court's conclusion awarding damages to Palm is erroneous because the damages were not foreseeable or contemplated within the purchase order. Specifically, Berkel argues that any damages were unforeseeable because the purchase order, which contemplated payment on an hourly basis, did not contain a specified number of hours to be worked, did not have a fixed price and did not provide a "reasonable certainty" of the actual amount of service required. Appellant's Brief at 14.

Generally, the computation of damages is a matter within the sound discretion of the trial court. *Marathon Oil Co. v. Collins*, 744 N.E.2d 474, 481 (Ind.Ct. App.2001). We will not reverse a damage award unless it is based on insufficient evidence or is contrary to law. *Id.* A party injured by a breach of contract may recover the benefit of the bargain. *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 577 (Ind.Ct.App.2003), *trans. denied.* "Consequential damages may be awarded on a breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made" and are generally limited to "reasonably foreseeable economic losses." *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 31 (Ind.1999). "The test for measuring damages is forseeability at the time of entry into the contract, not facts

existing and known to the parties at the time of the breach; the test is an objective one." *Indiana & Mich. Elec. Co. v. Terre Haute Indus., Inc.*, 507 N.E.2d 588, 601 (Ind.Ct.App.1987), *reh'g denied, trans. denied.*

Consequential damages may include lost profits. *Marathon*, 744 N.E.2d at 482. "Where a contractor is prevented from completing a project by the owner, the contractor, as a part of its measure of damages, is entitled to its lost profit." *Indiana & Mich. Elec.*, 507 N.E.2d at 601. Where damages consist of lost profits, a proper award of lost profits must be confined to lost net profits. *Ashland Pipeline Co. v. Ind. Bell Tel. Co., Inc.*, 505 N.E.2d 483, 490 (Ind.Ct.App. 1987), *reh'g denied, trans. denied.* An award of damages for lost profits is proper where the evidence is sufficient to allow the trier-of-fact to estimate the amount with a reasonable degree of certainty and exactness. *Marathon*, 744 N.E.2d at 482. However, lost profits need not be proved with mathematical certainty. *Id.* Lost profits are not uncertain where there is testimony that, while not sufficient to put the amount beyond doubt, is sufficient to enable the factfinder to make a fair and reasonable finding as to the proper damages. *Id.* In addition, any doubts and uncertainties as to proof of the exact measure of damages must be resolved against the defendant. *Weston v. Buckley*, 677 N.E.2d 1089, 1093 (Ind.Ct.App.1997), *trans. denied.*

The trial court found, in part, as follows:

\* \* \* \* \*

10. Berkel contracted with Palm to perform the following tasks, as well:

Field Crew—2 men full time during the course of our work

- Stake centers of approximately 800 auger pilings[.]

- Measure as-built locations of constructed piles measurements.
- Prepare as-built drawings of client specified pile groups & submit to client within 24 hours of request.

\* \* \* \* \*

12. Palm was to be compensated at the rate of $110 per hour, per man, for performance of the work to be performed at the Project site.

\* \* \* \* \*

14. The Contract does not specify a fixed time for completion of the work, nor a fixed number of man-hours for which Palm was to be compensated.

15. The Contract was an unusually large project for surveying work, in terms of its scope and duration, and therefore a lucrative opportunity for Palm. Both Berkel and Palm recognized this fact at the time of execution of the Contract.

\* \* \* \* \*

25.... Palm estimated it would require 520 man hours to perform the activities the Contract contemplated would be performed at the Project by Tincher and Compton.

\* \* \* \* \*

27. The hourly cost to Palm of Tincher and Compton's wages and expenses, calculating the tax and other burden at fifteen percent (15%) is $28.75. The hourly cost of travel time to Palm is $.59, for a total hourly cost to Palm for Tincher and Compton's time in the field of $29.34.

\* \* \* \* \*

Appellant's Appendix at 7–8.

The trial court found that the parties foresaw that this was a lucrative con-

tract. Here, the purchase order required Palm to provide surveying services to stake approximately 800 auger pilings, and Berkel agreed to pay Palm $110 per hour for this surveying work. We cannot say that Palm's damages that arose when Berkel hired another company to perform the work that Palm agreed to do and instructed Palm to cease all work under the purchase order was not a reasonably foreseeable economic loss from Berkel's breach and was not contemplated when the contract was made. Although the purchase order did not specifically define the total amount of hours necessary to complete the services, the parties could estimate the number of hours. Furthermore, damages for lost profits need only be shown to a reasonable degree of certainty and need not be proved with mathematical certainty. Accordingly, we cannot say that the trial court's judgment awarding damages to Palm was clearly erroneous.

### B. Mitigation

Berkel argues that the trial court's conclusion that Berkel failed to prove its affirmative defense of mitigation of damages was clearly erroneous. As a general rule a nonbreaching party must mitigate damages. *National Adver. Co. v. Wilson Auto Parts, Inc.*, 569 N.E.2d 997, 1001 (Ind.Ct.App.1991). However, this general rule is not without exception or limitation. *Id.* The breaching party has the burden of proving that the nonbreaching party has failed to use reasonable diligence to mitigate damages. *Id.*

Berkel asserts that Palm was required to mitigate its damages upon Berkel's breach of the contract because the purchase order was a personal service contract, where Palm's other income would need to offset any damages. Berkel maintains, however, that Palm mitigated its damages by accepting additional work af-

ter Berkel breached the contract, but that the trial court should have deducted any amount for such additional work from the damages awarded to Palm. Palm argues that the purchase order did not constitute a personal service contract because anyone acting on behalf of Palm could have completed the work and that its completion of additional work did not need to be deducted from its damages because Berkel failed to show that Palm was only able to accept the additional work because of Berkel's breach of contract.

To support their arguments, both parties rely on *Albert Johann & Sons Co. v. Echols*, 143 Ind.App. 122, 238 N.E.2d 685 (1968). There, the defendant contracted to employ the plaintiff in an advisory capacity. After the defendant breached the contract, the plaintiff performed work elsewhere, and the defendant argued that the plaintiff's earnings subsequent to the termination of his contract should be deducted as mitigation of the plaintiff's damages. *Id.* at 129, 238 N.E.2d at 689. The trial court rejected the defendant's evidence of the plaintiff's earnings to be used as mitigation. *Id.* On appeal, we stated the following general rule:

> [W]here one person holds a contract to perform services for another and the other party wrongfully discharges the employee, then, while said employee may have a cause of action for damages resulting from the wrongful discharge, he may not sit idly by, but must make a reasonable effort to secure other work and any income from such work may be offset against the damages sought.

*Id.* We, however, recognized an exception to the above rule where the wrongfully discharged employee is not required to devote his entire time to work under the contract. *Id.* We noted that the plaintiff, who was not contractually required to refrain from other work and did not agree to devote his entire time to work under the

contract, would have earned the additional money even if the defendant had not terminated the contract. *Id.* at 130, 238 N.E.2d at 689. Thus, we held that the plaintiff's earnings from his employment after the defendant had terminated the contract did not need to be deducted as a means of mitigating his damages. *Id.*

■■■ Here, the trial court's findings of fact reveal the following:

\* \* \* \* \*

11. Palm devoted the time of its employees, Jason Tincher and John Compton, to the performance of the Contract.
12. Palm was to be compensated at the rate of $110 per hour, per man, for performance of the work to be performed at the Project site.

\* \* \* \* \*

16. The work to have been performed by Palm under the Contract, although expansive in terms of its scope and duration, did not involve the provision of unique personal services.

\* \* \* \* \*

30. After the Contract was terminated, Palm's employees Compton and Tincher worked on other accounts or projects which (sic) Palm was obligated to perform for other customers.
31. Had the Contract not been terminated, the work performed by Compton and Tincher, as described in finding numbered 30, would have been performed by Palm, nonetheless.
32. Berkel has failed to introduce evidence sufficient to show that income received by Palm for work performed by it after Berkel's breach of the Contract was received as a result of Palm being relieved from its performance of the Contract. *Albert Johann & Sons, Co. v. Echols,* 143 Ind.App. 122, 238 N.E.2d 685 (1968).

\* \* \* \* \*

Appellant's Appendix at 7–10.

Here, the trial court found that Palm performed other work after Berkel breached the contract, that it would have earned the additional money on the subsequent project even if Berkel had not terminated the contract, and that Berkel failed to show that Palm's completion of additional work was only the result of Berkel's breach. During the bench trial on damages, the president of Palm testified that Palm performed work for other customers during the time that it had contracted to complete the surveying work for Berkel and that it still would have performed this additional work even if Berkel had not terminated the contract. Thus, the evidence supports the trial court's findings. Because Palm would have completed the additional work even if Berkel had not breached the contract, Palm's earnings from the subsequent job after Berkel had terminated the contract did not need to be deducted as a means of mitigating damages. *See Johann & Sons,* 143 Ind.App. at 130, 238 N.E.2d at 689. Accordingly, we cannot say that the trial court's conclusion that Berkel did not prove its affirmative defense of failure to mitigate damages was clearly erroneous.

For the foregoing reasons, we affirm the trial court's grant of partial summary judgment to Palm, the trial court's denial of Berkel's summary judgment motion, and the trial court's judgment awarding damages to Palm.

Affirmed.

VAIDIK, J., concurs.

MATHIAS, J., dissents with separate opinion.

MATHIAS, Judge, dissenting.

I respectfully dissent.

I believe the trial court erred when it entered summary judgment in favor of

Palm because the Purchase Order at issue here does not "fulfill[ ] the office of a valid, binding, and exclusive contract" between the parties. *Dayhuff v. Canonie Constr. Co.*, 152 Ind.App. 154, 156, 283 N.E.2d 425, 427 (1972). The Purchase Order issued by Berkel did not specify a fixed time for completion of the work, any estimated number of hours for which Palm would be paid, nor any guaranteed minimum payment to Palm. The Purchase Order merely set forth the scope of the surveying work required for the Project and the terms of any surveying work Berkel should choose to order from Palm. Therefore, at best, the Purchase Order is an indefinite quantities contract that is unenforceable.

As in *Dayhuff,* the Purchase Order at issue here calls for a service (surveying), sets out the overall scope of the work that will be needed ("stake centers of approximately 800 auger pilings"), and provides the rate at which the services would be charged ("$110.00/hr."). Appellant's App. p. 16. Due to time pressures on the Project, Berkel, like Canonie in *Dayhuff,* ultimately opted to engage other firms to perform the work it needed.

This court held that the purchase order at issue in *Dayhuff* was not a valid contract because it was too indefinite and "the lack of [Dayhuff's] obligation to accept the offer ... defeats mutuality." *Dayhuff,* 152 Ind.App. at 156–157, 283 N.E.2d at 427. Likewise, Palm was not obligated to accept the offer as set forth in the Purchase Order. In fact, the record indicates that when Palm learned it would be required to reach an agreement with the union before being given any more work on the project, Palm informed Berkel that it would not be able to perform its surveying work at the price set forth in the Purchase Order. Berkel therefore requested that Palm submit a revised price quote. Critically important is the fact that Palm never submitted the requested revised quote to Berkel.

Appellant's App. pp. 61, 66. This back and forth communication where one contractor ceases to communicate thereby forcing the other contractor to find alternative performance is quite common in the construction industry. At the very least, these circumstances preclude the entry of summary judgment in favor of Palm on its breach of contract claim.

Moreover, even if the Purchase Order can in fact be stretched into an enforceable contract, genuine issues of material fact remain as to its terms. Whether the items to be supplied under the Purchase Order are subject to the overall project requirement of union labor is an extremely large and genuine issue of material fact that precludes the entry of summary judgment for Palm.

For all these reasons, I would reverse the trial court's entry of summary judgment in favor of Palm and remand for a trial on liability and damages.