INDIANA–AMERICAN WATER
COMPANY, INC., Appellant–
Plaintiff,

v.

TOWN OF SEELYVILLE,
Appellee–Defendant.

No. 84A01–9801–CV–32.

Court of Appeals of Indiana.

Sept. 11, 1998.

Daniel W. McGill, Nicholas K. Kile, Barnes & Thornburg, Indianapolis, Carroll D. Smeltzer, Cox, Zwerner, Gambill & Sullivan, Terre Haute, for Appellant–Plaintiff.

Timothy E. Fears, Wright, Shafley & Lowery, Terre Haute, Michael A. Wukmer, Robert A. Anderson, Ice Miller Donadio & Ryan, Indianapolis, for Appellee–Defendant.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Indiana–American Water Company, Inc. ("Water Company") appeals the trial court's determination that Appellee–Defendant Town of Seelyville, Indiana ("Town") would not be in breach of the contract between Water Company and Town by developing its own water supply to reduce its need to purchase water from Water Company. We affirm.

### Issues

Water Company raises one compound issue which we restate and expand into the following two issues:

I. Whether the contract is an unenforceable, illusory "indefinite quantities" contract or an enforceable "exclusive requirements" contract.

II. Whether the Town will breach the contract by developing its own water supply to reduce (or perhaps eliminate) its need to purchase water from Water Company.

### Facts

The evidence is undisputed. In 1983, Water Company and Town entered into a contract which provides in pertinent part as follows:

Company agrees to sell to the Town, and Town agrees to purchase from Company, at the rates hereinafter mentioned, such quantities of water as the Town may hereafter from time to time need (subject to all limitations contained in this Agreement) . . . .

(R. 13, 16). The term of the contract is twenty-five years and will expire in the year 2008. (R. 22–23). The contract limits the quantity of water the Town may purchase to one million gallons of water per day. (R. 20). The contract contains other limitations and provides that "in no event shall the Company be obligated to supply water in excess of the limitations on usage as provided for expressly in this Agreement. . . ." (R. 21).

In 1967 (many years before the present contract was executed), Town acquired land which could be used as a wellfield to supply water. (R. 38). In 1997, Town announced its plan to sell bonds to finance the construction of the improvements necessary to obtain water from the wellfield. (R. 10).

Water Company initiated the present lawsuit seeking a declaratory judgment that Town's plan to develop its own supply of water would constitute a breach of the contract which, Water Company contends, requires Town to purchase all the water it needs from Water Company. After a hearing, the trial court entered findings and a judgment order which reads in pertinent part as follows:

"WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Agreement is valid and binding, that it permits the Town to purchase its water need from [Water Company] but does not require it to purchase all of its water from [Water Company] and that the Town's development and utilization of its own source of water diminishes its need and does not violate the Agreement."

(R. 142). This appeal followed.

## Discussion and Decision

■ We begin our analysis by noting that our supreme court has expressed its commitment to advancing the public policy in favor of enforcing contracts. *See Fresh Cut, Inc. v. Fazli,* 650 N.E.2d 1126, 1129 (Ind. 1995). Indiana courts recognize that it is in the best interest of the public not to unnecessarily restrict persons' freedom to contract. *Id.* Thus, as a general rule, the law allows persons of full age and competent understanding the utmost liberty in contracting; and their contracts, when entered into freely and voluntarily, will be enforced by the courts. *Pigman v. Ameritech Publishing Inc.,* 641 N.E.2d 1026, 1029 (Ind.Ct.App. 1994). Indiana has long adhered to the rule that contracting parties may enter into any agreement they desire so long as it is not illegal or contrary to public policy. *Id.* at 1030.

### Standard of Review

■ In the present case, a motion for specific findings was filed pursuant to Ind. Trial Rule 52(A). The purpose of making special findings is to provide the parties and reviewing courts with the theory upon which the judge decided the case so that the right of review might be preserved effectively. *In re Marriage of Stetler,* 657 N.E.2d 395, 398 (Ind.Ct.App.1995), *trans. denied.* On appeal of a bench decision, the appellate court will not set aside the judgment unless it is clearly erroneous. Ind. Trial Rule 52(A). In reviewing a judgment where a motion for specific findings has been filed, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Breeden v. Breeden,* 678 N.E.2d 423, 425 (Ind.Ct.App.1997). The judgment is clearly erroneous only when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *Id.* Findings of fact are clearly erroneous only when the record lacks any evidence to support them. *Id.* In reviewing the findings and judgment entered by the trial court, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

■ Nevertheless, where trial court findings on one legal theory are adequate, findings on another legal theory amount to mere surplusage and, even if erroneous, cannot constitute the basis for reversal. *Williams v. Rogier,* 611 N.E.2d 189, 196 (Ind.Ct.App.1993), *trans. denied; Donavan v. Ivy Knoll Apartments Partnership,* 537 N.E.2d 47, 52 (Ind.Ct.App.1989). Moreover, we may affirm the judgment on any legal theory supported by the findings even where a motion for specific findings has been filed. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998). However, before affirming on a legal theory supported by the findings but not espoused by the trial court, the appellate court should be confident that its affirmance is consistent with all of the trial court's findings of fact and the inferences reasonably drawn from the findings. *Id.* at 924.

■ The party asserting a breach of contract bears the burden of proof. *JKL Components Corporation v. Insul–Reps, Inc.,* 596 N.E.2d 945, 954 (Ind.Ct.App.1992), *trans. denied.* As will be discussed under Issue II, the precise issue in this case is whether Town exercised good faith in reducing the amount of water it required from Water Company. The burden of proving the buyer's bad faith in reducing its orders under a

requirements contract is on the seller who would benefit from a showing of bad faith. *Tigg Corporation v. Dow Corning Corporation*, 962 F.2d 1119, 1123–24 (3rd Cir.1992), *cert. dismissed*, 506 U.S. 1042, 113 S.Ct. 834, 122 L.Ed.2d 111; J. White and R. Summers, *Uniform Commercial Code*, p. 127 (1980).

 As Water Company had the burden of proof in this action, it is appealing from a negative judgment. When reviewing an appeal from a negative judgment, the cause will be reversed only if the judgment is contrary to law; that is, the evidence is without conflict and leads to but one conclusion which is contrary to that reached by the trial court. *Matter of Adoption of Topel*, 571 N.E.2d 1295, 1298–99 (Ind.Ct.App.1991).

### Contract Interpretation

 Construction of the terms of a written contract is a pure question of law for the court; thus, our standard of review is de novo. *George S. May International Co. v. King*, 629 N.E.2d 257, 260 (Ind.Ct.App.1994), *trans. denied*. The primary and overriding purpose of contract law is to ascertain and give effect to the intentions of the parties. *Smart Corporation v. Grider*, 650 N.E.2d 80, 83 (Ind.Ct.App.1995), *trans. denied*. In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties. *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1313 (Ind. App.1991), *trans. denied*. The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases or paragraphs read alone. *Smart*, 650 N.E.2d at 83. The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Bicknell*, 570 N.E.2d at 1316. Where possible, courts will construe contracts as being valid, rather than void. *Smart*, 650 N.E.2d at 83.

### I. Indefinite Quantities or Exclusive Requirements Contract

 Output and requirement contracts are governed by the Uniform Commercial Code ("UCC") as adopted in Indiana under IND.CODE § 26–1–2–306(1) as follows:

> A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

As discussed above, Water Company contends that the contract requires Town to purchase all its water from Water Company and, in effect, prohibits Town from developing its own water supply. Water Company asserts that any other interpretation of the contract renders it unenforceable for lack of mutuality or indefiniteness because, although Water Company is required to supply all the water Town needs (within the limitations provided in the contract), Town is not required to purchase any minimum amount of water from Water Company. Thus, Water Company raises the implied threat that, if Town does not purchase all of its water from Water Company, Water Company is not bound by the contract and is free to leave the Town "high and dry" unless the Town capitulates to its demands.

 A requirements contract is one in which the purchaser agrees to buy all of its needs of a specified material exclusively from a particular supplier, and the supplier agrees, in turn, to fill all of the purchaser's needs during the period of the contract. *Mason v. United States*, 222 Ct.Cl. 436, 615 F.2d 1343, 1346 (1980), *cert. denied*, 449 U.S. 830, 101 S.Ct. 98, 66 L.Ed.2d 35. On the other hand, an indefinite quantities contract is a contract under which the buyer agrees to purchase and the seller agrees to supply whatever quantity of goods the buyer chooses to purchase from the seller. *Id.* at 1343 n. 5. A requirements contract differs from an indefinite quantities contract in that, under a requirements contract the buyer agrees to turn exclusively to the seller to purchase his requirements as they develop. *Id.; Torncello v. United States*, 231 Ct.Cl. 20, 681 F.2d 756, 761, 769 (1982). However, in an indefi-

nite quantities contract, even if the buyer needs the commodity in question, he is not obligated to purchase it from the seller. *Id.* Thus, an indefinite quantities contract, without at least the requirement that the buyer purchase a guaranteed minimum quantity from the seller, is illusory and unenforceable. *Id.* As expressed under Indiana law: "it is fundamental that a contract is unenforceable if it fails to obligate the parties to do anything." *Licocci v. Cardinal Associates, Inc.,* 445 N.E.2d 556, 559 (Ind.1983).

■ As noted above, we will strive to interpret a contract as valid rather than void. *See Smart,* 650 N.E.2d at 83. Additionally, where it is apparent that a binding exclusive requirements contract was intended, the buyer's promise to purchase from seller exclusively will be implied. *Brem–Rock, Inc. v. Warnack,* 28 Wash.App. 483, 624 P.2d 220, 224 (1981). Moreover, the requirement of good faith, specifically imposed under UCC § 2–306, prevents requirement contracts from being illusory or too indefinite to be enforced. UCC § 2–306 (official comment 2); *Brem–Rock,* 624 P.2d at 224.

The present contract under scrutiny provides that Town will purchase "such quantities of water as the Town may hereafter from time to time need ..." from Water Company. (R. 16). Moreover, the contract provides that "in no event shall the Company be obligated to supply water in excess of [one million gallons per day]." (R. 20–21). There has never been any contention that the contract permits Town to shop around and purchase its water needs up to one million gallons per day from any supplier other than Water Company. Thus, we interpret the present contract as a valid and enforceable exclusive requirements contract which requires Town to use Water Company exclusively to supply all the water it must purchase to meet its needs up to the amount of one million gallons of water per day.[1]

## II. Good Faith Reduction or Curtailment of Requirements

■ The most common problem arising out of a requirements contract is the situa-tion where the price of the commodity is advantageous to the buyer who then demands a quantity unreasonably in excess of his needs in order to resell the excess at a profit, placing himself in competition with the seller. *See Empire Gas Corporation v. American Bakeries Co.,* 840 F.2d 1333, 1337 (7th Cir.1988); *Northern Indiana Public Service v. Colorado Westmoreland, Inc.,* 667 F.Supp. 613, 636 (N.D.Ind.1987), *affirmed,* 845 F.2d 1024 (7th Cir.1988). The provision in § 2–306(1) forbidding the "demand" by a buyer under a requirements contract to a "quantity unreasonably disproportionate to any stated estimate" applies only to this type of situation where the buyer requests more, as opposed to less, of the commodity in question. *Empire Gas,* 840 F.2d at 1337–38; U.C.C. Rep. Serv. (Callaghan), Art. 2–344 n. 4. The *Empire Gas* court noted that there was no indication that the drafters of the UCC were equally, if at all, concerned about the case, such as the one at bar, where the buyer takes less than his estimated requirements, provided, of course, that he does not buy from anyone else. 840 F.2d at 1338.

■ Generally, the buyer in a requirements contract governed by UCC § 2–306(1) is required merely to exercise good faith in determining his requirements and the seller assumes the risk of all good faith variations in the buyer's requirements even to the extent of a determination to liquidate or discontinue the business. *Empire Gas,* 840 F.2d at 1337–38; *Lambert Corporation v. Evans,* 575 F.2d 132, 138 (7th Cir.1978); *Northern Indiana Public Service,* 667 F.Supp. at 636; J. White and R. Summers, at 126. However, the buyer is not free, on any whim, to quit buying from seller. *Empire Gas,* 840 F.2d at 1340; *Lambert,* 575 F.2d at 138. How exigent the buyer's change of circumstances must be to allow him to scale down his requirements is a difficult question. *Empire Gas,* 840 F.2d at 1340. The seller assumes the risk of a change in the buyer's business that results in a substantial reduction in the buyer's needs, but the buyer assumes the

1. Obviously, the contract permits the Town to obtain amounts in excess of one million gallons per day from any supplier.

risk of a less urgent change in circumstances. *Id.* The essential ingredient of the buyer's good faith under such circumstances is that he not merely have had second thoughts about the terms of the contract and want to get out of it. *Id.* However, if the buyer has a legitimate business reason for eliminating its requirements, as opposed to a desire to avoid its contract, the buyer acts in good faith. *Brewster of Lynchburg, Inc. v. Dial Corporation,* 33 F.3d 355, 366 (4th Cir.1994).

 It is well-settled that it is not bad faith to take advantage of a technological advance which reduces the buyer's requirements. *See Southwest Natural Gas Co. v. Oklahoma Portland Cement Co.,* 102 F.2d 630 (10th Cir.1939); *Empire Gas,* 840 F.2d at 1340. In *Southwest,* the buyer agreed to buy all its gas from seller for fifteen years. Seven years later, the buyer replaced its boiler, which had worn out, with more modern equipment which reduced its requirements for gas by 80%. The court held that this was a good faith reduction in requirements because it would have been unreasonable to require the buyer to replace its boiler with an obsolete, inefficient unit. *Id.*

Understandably, Water Company relies on the case of *Andersen v. La Rinconada Country Club,* 4 Cal.App.2d 197, 40 P.2d 571 (1935) which held that a golf course which had agreed to buy water under a requirements contract breached that contract by purchasing a wellfield in order to obtain its own supply of water. 40 P.2d at 573. However, *Andersen* is distinguishable from the case at bar. The *Andersen* contract provided that the golf course would "purchase water from no other source." *Id.* at 572. Thus, the *Andersen* court held that the golf course's "purchase" of a wellfield to supply its water constituted a breach of the contract. In the present case, Town did not purchase or otherwise acquire its wellfield during the term of the contract. Instead, Town had owned the wellfield for many years before the present contract was executed.

In the present case, Town had acquired a wellfield many years before the execution of the contract under scrutiny. Town's decision to develop its preexisting wellfield constitutes a legitimate, long-term business decision, and not merely a desire to avoid the terms of its contract with Water Company. Therefore, based on the above, we cannot conclude that Water Company carried its burden of overcoming the negative judgment in this case by demonstrating that the evidence leads unerringly to the conclusion that Town's development of its pre-existing wellfield to reduce its need to purchase water from Water Company constitutes bad faith. Although the specific findings entered by the trial court did not discuss the dispositive issue of Town's good faith under IND.CODE § 26–1–2–306, we are confident that our affirmance of the trial court's judgment is consistent with all of the trial court's findings of fact and the inferences reasonably drawn therefrom. *See Mitchell,* 695 N.E.2d at 923–24.

Affirmed.

BAKER and DARDEN, JJ., concur.