Raymond SNELLENBARGER,
Appellant–Plaintiff,

v.

Peter F. KUNZ and Jane Elder Kunz, and Two Gaits Development Company, Limited Partnership, Appellees–Defendants.

No. 29A02–0209–CV–755.

Court of Appeals of Indiana.

Nov. 14, 2003.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, IN, Attorney for Appellant.

S. Gregory Zubek, Whitham Hebenstreit & Zubek LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Raymond Snellenbarger appeals the trial court's judgment in favor of Peter Kunz, Jane Kunz, and Two Gaits Development Company, L.P. (collectively, "Kunz"). Snellenbarger raises three issues,[1] which we consolidate and restate as:

---

1. Snellenbarger's statement of the issues contains six issues; however, he combined some

1. Whether a supplemental agreement requiring a contractor to pay damages if a job is not completed by a specified date was entered without consideration and is an unenforceable penalty provision; and

2. Whether sufficient evidence supports the trial court's judgment for Kunz and its damage award.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In September of 1997, Snellenbarger contracted with Kunz to move an historic barn[2] from its original location to a Kunz property. The agreement provided, in pertinent part:

WORK TO BE DONE:

1. DISASSEMBLE OLD BARN.

2. PREP NEW SITE.

3. POUR NEW FOUNDATION WITH FOUR FOOT OF ADDITIONAL HEIGHT.

4. RAISE OLD BARN ON NEW SITE.

5. LOWER LOFT FLOOR 3' AND LOWER ROOF PITCH.

6. PLANE PAINT FROM OLD SIDING.

7. MAKE OLD BARN MATCH PICTURE IN CUSTOMER'S BOOK.

LABOR / PAYMENT AGREEMENT:

THE ABOVE WORK PERFORMED IN ACCORDANCE WITH SPECIFICATIONS SUBMITTED FOR ABOVE WORK AND COMPLETED IN A SUBSTANTIAL WORKPERSONLIKE MANNER FOR THE ABOVE SUM WITH PAYMENTS TO BE MADE AS FOLLOWS: 1/4 AT BEGINNING OF PROJECT, 1/4 AFTER BARN READY TO BE MOVED, 1/4 AFTER BARN MOVED, AND 1/8 UPON COMPLETION OF PROJECT AND REMAINDER 2 MONTHS AFTER COMPLETION. ALL ADD–ONS TO BE PAID UPON COMPLETION OF SAID ADD–ON.

ANY ALTERATIONS (ADD–ONS) FROM ORIGINAL SPECIFICATIONS INVOLVING EXTRA COSTS, WILL BE PERFORMED ONLY UPON WRITTEN ORDERS, AND WILL BECOME AN EXTRA CHARGE OVER AND ABOVE THE ESTIMATE. ALL TIME AGREEMENTS CONTINGENT UPON ACCIDENTS OR DELAYS BEYOND OUR CONTROL, I.E. WEATHER.

(Appellant's App. at 18) (capitalization in original).

The estimated cost for undertaking those seven steps was $91,945.25. However, Kunz received a $12,900.00 discount because the barn was in above average condition and a $10,000.00 discount because Snellenbarger was permitted to salvage and keep materials from a second barn if those materials were not needed for reconstructing the Kunz barn. After the discounts, Kunz was to pay Snellenbarger $69,045.25.

Snellenbarger and his subcontractors began dismantling the barn. Within the first week of work, based on conversations with the work crew at the site, Kunz "had doubts about [Snellenbarger's] ability to do the work." (*Id.* at 140.)

On October 10, Kunz and Snellenbarger signed a second agreement:

Agreed This Date 10–10–97 That Raymond's Barns Shall pay To Mr. P. Kunz

of those issues such that his argument section contains only three. We further consolidate his two sufficiency arguments.

**2.** The barn was built during the 1860's or 1870's.

The Sum of $500 <u>00</u> A Day And $250 <u>00</u> To R.L. Wilfong Land Corp. in The event That The Barns Are Not Down and Moved To The New Site By 10–20–97.

(*Id.* at 21) (capitalization in original).

On October 11, Snellenbarger was hospitalized. He remained in the hospital until October 15, after which he was confined to bed rest at home until the 25th of October. During that time, he did not visit the worksite.

On October 16, 1997, someone from Historic Landmarks [3] asked another contractor, Amos Schwartz, to check the status of the barn's removal. That day, Schwartz visited the site and found the site was "a mess" (Appellee's App. at 94) and "there was junk everywhere." (*Id.*) Schwartz testified that two men and one woman were at the site, but only one man was working on disassembling the barn. The other man and the woman indicated they were foremen. The man who was working got off a ladder to ask Schwartz "how do you get pins out[?]" [4] (*Id.*) The next day, Schwartz met with Kunz to report his opinion of the work being done.

On October 19, Kunz called Snellenbarger and told him he was being removed from the job. To complete the work Snellenbarger had not completed, Kunz had to pay the following amounts to other individuals or companies: $53,511.00 to Schwartz for dismantling and reassembling the barn; $21,384.00 to Rock Foundations, Inc. for foundation work; $1,040.00 to T.A. Million for hauling; $2,373.05 to Newton Crane Service, Inc. for crane service; and $1,000.00 to Russell Cavaly, a former Snellenbarger foreman, to obtain a lien release. When those amounts were added to the $17,250.00 Kunz paid Snellenbarger, the completed job cost Kunz $96,558.00.

Snellenbarger filed a $45,000.00 lien against both the land where the barns were originally located and Kunz's residential property. Thereafter, Snellenbarger filed suit for breach of contract and to foreclose the liens. Kunz counterclaimed for breach of contract. After a bench trial, the court entered judgment for Kunz on Snellenbarger's breach and foreclosure claims. In addition, the court entered judgment for Kunz on the counterclaim and awarded Kunz $27,513.00, which is the difference between the contract price and the amount Kunz paid others to finish the job.

## DISCUSSION AND DECISION

### 1. *Validity of Supplemental Agreement*

█ Snellenbarger claims the supplemental agreement is void as a matter of law because penalty provisions are not allowed under Indiana law and because he was not given consideration in exchange for his signature on the penalty provision. Assuming *arguendo* the amendment of October 10, 1997 was an unenforceable penalty provision entered without proper consideration, such fact would not require us to reverse the trial court's judgment. The judgment for Kunz was not based on a breach of the deadline established in that amendment. Rather, the trial court determined Snellenbarger breached the contract by failing to perform in a workmanlike manner as required by the original

---

**3.** While we were not directed to an explanation in the record, we presume Historic Landmarks refers to the Historic Landmarks Foundation of Indiana, which "saves and restores irreplaceable architectural heritage." *See* Historic Landmarks Foundation of Indiana at www.historiclandmarks.org (last visited Sept. 17, 2003).

**4.** Barns of this era were built with interlocking timbers fastened with wooden pins.

contract. Moreover, the damages the trial court awarded to Kunz were not based on the penalty provision. Therefore, the validity of supplemental agreement does not affect the validity of the trial court's judgment, and we need not address it.

### 2. *Sufficiency of Evidence*

 Pursuant to a request, the trial court entered extensive findings and conclusions. Accordingly, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). A judgment is clearly erroneous if it is unsupported by the findings and conclusions, and findings are clearly erroneous if "the record lacks any evidence to support them." *Ind.-Am. Water Co., Inc. v. Town of Seelyville*, 698 N.E.2d 1255, 1258 (Ind.Ct.App.1998). Accordingly, we determine first whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* In reviewing the findings and judgment, we may consider "only the evidence favorable to the judgment and all reasonable inferences flowing therefrom." *Id.* We may affirm the trial court's decision on any legal theory supported by the findings. *Id.*

### A. *The Judgment*

Snellenbarger offers a number of arguments regarding why the trial court erred in concluding Snellenbarger breached the contract. Because his arguments fail, we affirm the judgment in favor of Kunz.

 First, Snellenbarger claims "the Court's conclusion that [Snellenbarger] was in breach for not completing disassembly by October 19, 1997, was in error and contrary to the evidence and admissions of Kunz." (Appellant's Br. at 11.) However, the trial court did *not* find that Snellenbar-

ger breached the contract by failing to perform in a timely manner. Rather the court concluded: "4. The Agreement required Snellenberger [sic] to perform work in a 'substantial workmanlike manner'. [sic] Snellenberger [sic] and his crew, whether independent contractors or employees, failed to perform in a workmanlike manner and Kunzes properly removed Snellenberger [sic] from the Project." (Appellant's App. at 15.) Consequently, Snellenbarger's arguments regarding the completion date are irrelevant.

Second, Snellenbarger claims:

> [T]here was no work done which was improper. The "work" was the salvage and stocking of materials. No artifact or item was damaged or lost, and therefore there was no issue of "workmanlike quality." The only issue offered as a breach of "workmanlike quality," was the after-the-fact claim that the contractor should have met an illusory phase target date which [Kunz] had voided or that [Kunz] anticipated that Snellenbarger might damage the materials.

(Appellant's Br. at 12.)

 The findings do not support Snellenbarger's claim. Specifically, the trial court found:

> 8. The undisputed evidence is that the work was not proceeding properly and, in fact, Snellenberger [sic] himself testified that the work was not proceeding properly with Cavaly as his job foreman.

\* \* \* \* \*

> 23. Amos Schwartz d/b/a Amos B. Schwartz Construction (hereinafter "Schwartz"), an experienced barn mover, building mover and building rehabilitator, at the request of Marsh Davis of Historic Landmarks on behalf of the Kunzes, went to the job site on October

16, 1997 and reviewed the state of the Project, which appeared to him to be in disarray with workers indicating a lack of knowledge on how to deal with the deconstruction of Historic Barn.

24. On Friday, October 17, 1997, Schwartz met with the Kunzes to discuss the Project and his reservation about the prosecution and status of it.

25. [Kunz] called Snellenberger [sic] on October 19, 1997 and told him that he should remove his crew from the job the following day, Monday, October 20, 1997.

(Appellant's App. at 8, 11.) These findings support the trial court's conclusion that Snellenbarger was not proceeding in a workmanlike manner.

■ The evidence supports those findings. Snellenbarger testified Cavaly was removed as foreman because "work [was] not proceeding properly." (*Id.* at 59.) Schwartz testified about his experience at the dismantling site on October 16th:

I had my pickup and I pulled in there and I stopped back away from it cause [sic] I never seen [sic] such a mess. And I don't want to downplay you at all because I guess you wasn't [sic] even there. But I was taught from little on that things should be done in decency and in order. And on my jobs you do not walk over junk, and there was junk everywhere. And I formed an opinion and a quick one. And there's [sic] two people come walking, a man and a woman, and I don't know if they were in vehicles or what, but they were not in the barn. And they both said they were foremans or something on the project, and they wanted to know why I was there. And I said, well, I'm not sure because I wasn't sure what I was doing there. I was just asked to go by and look, which I did. And then a young man was up on a ladder and this ladder was on a slope like this here and it was

clear up to the (inaudible). And from that point to the floor probably was about 24 foot, and there was nothing holding the bottom of the ladder. And he came down off of that and he walked over to me and he said how do you get pins out, and I said oh, crap. That wasn't the word I used, but anyway ... a person taking a barn down that is— this is a valuable piece of property, although it looked like to some people might look like it was junk, it was a valuable piece of property and they didn't even know how to take the pins out. The pins are a major thing in taking the frame apart....

(Appellee's App. at 94–95.) This evidence is sufficient to support the trial court's findings.

Because the evidence supports the findings and the findings support the conclusion that Snellenbarger breached the contract by failing to perform in a workmanlike manner, the trial court's judgment for Kunz is not clearly erroneous.

### B. *Damages*

■ Snellenbarger argues "[w]hen an owner replaces a contractor not in breach, and the second contractor charges more than the first, the owner is not entitled to 'benefits of his bargain' damages." (Appellant's Br. at 17.) Snellenbarger's argument is premised on his assumption that he was not in breach. As explained above, the trial court's judgment in favor of Kunz, based on Snellenbarger's failure to perform the disassembly of the historical barn in a workmanlike manner, was not clearly erroneous. Accordingly, Snellenbarger, not Kunz, was in breach of the contract. As Snellenbarger has not argued that Kunz was not entitled to the benefit of his bargain if Snellenbarger breached the contract, we cannot say the trial court's damage determination was incorrect.

## CONCLUSION

Neither the trial court's judgment nor its damage award was predicated on the amendment to the contract regarding the date for completion. We therefore need not determine the validity of that amendment. In addition, because Snellenbarger breached the contract, his argument regarding the damage award fails. The trial court's judgment is supported by its findings and the evidence. We accordingly affirm the trial court's judgment in favor of Kunz.

Affirmed.

KIRSCH and MATHIAS, JJ., concur.