**FOR PUBLICATION**



FILED

Mar 30 2012, 9:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DENNIS J. STILGER**
Dennis J. Stilger, P.S.C.
Louisville, Kentucky

ATTORNEY FOR APPELLEE:

**TIMOTHY R. McCARTHY**
Louisville, Kentucky

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEINROCK ROOFING & SHEET METAL, INC., | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 22A05-1108-CC-457 |
| | ) | |
| JAMES S. McCULLOCH, PNC BANK, N.A. | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE FLOYD SUPERIOR COURT
The Honorable Maria D. Granger, Judge
Cause No. 22D03-1002-CC-327

**March 30, 3012**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

After the defendant-homeowner's roof was severely damaged in a windstorm, the plaintiff-contractor undertook to repair the damages. The homeowner failed to pay the entire amount due under the contract because of the contractor's allegedly deficient workmanship. The contractor sued and the homeowner counterclaimed. Substantial evidence was presented at trial establishing that the contractor's work was deficient in a number of respects. And the trial court, as the fact finder, properly awarded damages to the homeowner on his counterclaim. The trial court also properly concluded that the contractor had waived any claim to reduce the damage award under the Home Improvement Warranties statute.

Appellant-plaintiff Steinrock Roofing & Sheet Metal, Inc. (Steinrock), appeals the trial court's judgment entered in favor of appellee-defendant James S. McCulloch, and PNC Bank, N.A.[1] Specifically, Steinrock argues that the trial court erred in excluding discovery and the potential testimony of an insurance agent who inspected the work and made the payments for repairs on the roof. Steinrock also maintains that the trial court should have found in his favor on his defamation claim and that the trial court erred in finding a material breach of contract by Steinrock. Moreover, Steinrock argues that the trial court should have limited McCulloch's damages to the difference in fair market value in accordance with Indiana Code section 32-27-1-14, the Home Improvement Warranties statute.

---

[1] Although PNC Bank, N.A., is also a named defendant in this case, it did not appear at trial or assert any interest in the Real Estate.

2

Concluding that the trial court correctly determined that Steinrock breached the contract, properly awarded damages to McCulloch, and finding no other error, we affirm.

FACTS

McCulloch owned an older home in New Albany. On September 14, 2008, the clay tile roof of the residence was severely damaged in a wind storm. Thereafter, McCulloch made a claim for the damage to the roof with Westfield Insurance Company, his homeowner's insurance carrier.

Westfield estimated that the costs of repairs amounted to approximately $95,000. Thereafter, McCulloch contracted with Steinrock to repair the tile roof. The contract amount was for $95,367.13, which required 2% interest per month for late payments, plus the filing fee and reasonable attorney's fees.

Steinrock commenced work in May 2009, and completed it in August 2009. Pursuant to the contract, McCulloch made two payments totaling $75,270.60. However, McCulloch withheld $15,000 from the second check in light of concerns that he had regarding various deficiencies in the roof. Those deficiencies included leaking, falling, cracked, and warped tiles, and other tiles that were improperly installed. As a result of McCulloch's failure to pay the last draw under the contract, Steinrock filed a mechanic's lien against McCulloch.

Thereafter, Steinrock filed suit against McCulloch, seeking an unpaid balance on the contract in the amount of $29,096.53. McCulloch denied owing this amount and filed

3

a counterclaim, asserting that Steinrock had installed the roof in a negligent and un-workmanlike manner.

McCulloch hired Gilbert Arnold, a roofing expert from Louisville, Kentucky, to consult about the damages. At a bench trial that commenced on December 2, 2009, Arnold testified many of the field tiles were not attached properly to the wood deck, and many of the hip and ridge tiles were not embedded properly in the mortar and were loose. Mortar was missing in other tiles that resulted in open joints. Arnold further testified that field tiles were spaced too close together in many areas, and some of them appeared to be cupped, broken, and cracked. Arnold was of the opinion that the roof could only be restored by removing all of the tiles and replacing the underlayment and clay tile roofing. In sum, the entire roof needed to be removed and reinstalled.

During the pendency of the action, a second expert that both parties chose inspected the roof. The expert, Richard Spalding, of the Merrick-Kemper Company in Louisville, testified in a videotaped deposition. Spalding's findings coincided with those of Arnold. Spalding's primary concern was that the hip and ridge tiles were not properly installed, and he noted that they were poorly embedded in their mortar beds and their fasteners were insufficient. Spalding easily removed the screw holding in one of the hip joints with his fingers because it had failed to engage the wood to a depth of 3/4 inches per the manufacturer's recommendation. Rather, the hip and tile screws that Steinrock installed penetrated only 3/8 inch.

4

Spalding testified that he actually removed a hip tile, examined the underlayment, and determined that the tiles were not correctly installed. Spalding stated that two pieces of the underlayment met at a "point" at the hip and ridge, and commented that such was not the proper way to install the underlayment. Tr. p. 168. Spalding also testified that the tile spacing was not correctly laid out, in that there was some overlap and they were laid too tightly or too far apart from each other. Spalding was also of the opinion that the flashing at the chimney was not installed correctly and required replacement.

In sum, Spalding testified that while he did not believe that the entire roof needed to be replaced, many repairs had to be undertaken so the roof would last within its seventy-year life expectancy. Spalding estimated the repair costs at $75,059.00.

At a bench trial that commenced on March 1, 2011, McCulloch introduced photographic evidence that a rather large leak was coming from below the hip tiles. McCulloch testified to the many deficiencies including tiles that were cracked, chipped, warped, or cupped. Mortar was falling out of the hip and ridge joints and fasteners were sticking out of the top pieces of tile. Tile fasteners were being driven into empty joint spaces between the planks on his roof. McCulloch testified that he withheld the last payment because of these deficiencies.

It was also established at trial that during the pendency of the proceedings, McCulloch had heard that Steinrock had gone out of business and telephoned the company to ascertain its status. The phone call was received by a Ms. Tara Hunter who testified at trial. Hunter was the receptionist at Electric Blue, which is a blueprint

5

company that rents office space from Steinrock. Hunter testified that she received a brief phone call from McCulloch, inquiring as to whether Steinrock was still in business.

Hunter further testified she assured McCulloch that the business was still in operation and began to search for Steinrock's phone number. However, Hunter testified that she stopped looking for the number when McCulloch stated that he was checking because one of Steinrock's former employees allegedly stated that everyone had been laid off and the business was closing. Hunter testified that she spoke with her boss and an employee at Steinrock's office who verified that the business was still open. Hunter did not inform anyone else of this telephone conversation that she had with McCulloch, and simply dismissed the matter.

Tim Steinrock testified that none of his customers were informed about McCulloch's telephone call and stated that he did not lose any business as a result of the call. Moreover, Steinrock did not have to explain this conversation to any colleague, customer, or otherwise.

Steinrock admitted that not all of the roofing work was done correctly. During both direct and cross examination, Steinrock acknowledged that his crew used the wrong fasteners to attach the hip and ridge tiles. Steinrock also admitted that all the cracked, chipped, and broken tiles needed replaced. He also testified that some fasteners that were used by the crew were not correct and should not have been used. Steinrock then conceded that some of the flashing was not installed correctly, that it did not comply with industry standards, and needed to be redone.

6

Steinrock admitted to the deficiencies in the roof, yet he believed that the cost of replacing the items would be $6,500 to $7,500. He testified that it would take two men about one week to repair the deficiencies. Following a bench trial on March 1, 2011, the trial court entered judgment for McCulloch on his counter-claim against Steinrock. The trial court determined, among other things, that

> 23. The inquiry of whether Steinrock is still open made by McCulloch to Tara Hunter does not qualify as a defamatory statement.
>
> 24. No customers of Steinrock were notified of this telephone call, and no evidence of Plaintiff's loss was submitted.
>
> 25. PNC Bank . . . failed to appear or assert any interest in the subject Real Estate herein.
>
> 26. McCulloch breached his contract with Steinrock by failing to pay the full contract price and withholding the amount of . . . $20,096.53.
>
> 27. Steinrock breached its contract with McCulloch by failing to perform the contract in a workmanlike manner and caused damage in the amount of . . . $75,059.00.
>
> 28. The damages are offset, and this Court awards judgment in favor of McCulloch damages in the amount of . . . $54,962.47. This amount equals the difference between the estimate to repair the roof from Merrick Kemper in the amount of . . . $75,059.00, less the balance due to Steinrock under the contract in the amount of . . . $20,096.53.

Appellant's Br. p. 16-17. The trial court also denied both parties' requests for attorney's fees and released the mechanic's lien. Steinrock now appeals.

## DISCUSSION AND DECISION

### I. Discovery

7

Steinrock argues that the trial court erred in excluding the discovery and potential testimony of McCulloch's insurance agents who apparently inspected the work and made payment. More particularly, Steinrock maintains that our Supreme Court's holding in Richey v. Chappel, 594 N.E.2d 443 (Ind. 1990), does not apply here because the rule announced in Richey only excludes conclusions, opinions, and legal theories of an attorney or other representative of the party concerning the litigation. Steinrock maintains that nothing precludes the admissibility of the potential evidence because it was merely the insurance agent who handled the homeowner's claim as a result of the windstorm that led to the original roof damage.

As discussed above, Westfield was McCulloch's homeowner's insurance carrier that determined that the roof required replacement as a result of the windstorm. Steinrock delivered a subpoena to Westfield at its Louisville, Kentucky address. Thereafter, Westfield's attorney filed a motion to quash the subpoena.

On March 1, 2011, the trial court entered an order quashing the subpoena, stating that Steinrock did not comply with the Uniform Interstate Deposition and Discovery Act or the notice requirements of Trial Rule 30(B). The trial court further found that the information Steinrock sought from Westfield could contain impressions, conclusions, opinions or legal theories of Westfield to which Steinrock is not entitled to under Richey.

We note that while the trial court did rely on the holding in Richey in denying his request, the fact that the subpoenas were not served correctly and with proper notice, alone, supports the decision to quash the subpoenas and Steinrock does not challenge that

8

finding. Also, no matter what the material in the file might have shown, there was a multitude of evidence that was presented at trial, showing that Steinrock performed the work in a defective and un-workmanlike manner.

Indeed, both experts inspected the roof and the owner of Steinrock admitted that some of the work was deficient and needed to be repaired. In other words, no matter what testimony may have been acquired from an insurance agent in this case or materials that might have been in the claims file, the overwhelming evidence established that the work was performed in an un-workmanlike manner and that the roof needed repairs.

Finally, even assuming for the sake of argument that this issue turns solely on an interpretation of <u>Richey</u>, Steinrock does not prevail because it is attempting to obtain a claims file from a third-party. Again, Westfield was McCulloch's insurance carrier and not Steinrock's. Thus, the claims file contained information and communications between McCulloch and the insurance company. The <u>Richey</u> Court addressed the scope of privileged communications between an insured and the insurer in regards to third-party claims as follows:

> Uncertainty about whether the insured statements are discoverable gives rise to a conflict about whether a statement should be given at all, and undermines what should be a cooperative relationship amount the insured, insurer and attorney. An insured's relationship to the insurance company requires full disclosure by the insurer without fear that the statement may be later obtained by the claimant.

<u>Richey</u>, 594 N.E.2d at 446.

The above rationale applies here. Indeed, Steinrock sought to obtain a claims file that contained communications that obviously would have included statements between McCulloch and his insurance carrier, Westfield. Those materials are inadmissible in accordance with Richey.

We were confronted with a similar situation in Strack & Van Til, Inc. v. Carter, 803 N.E.2d 666 (Ind. App. 2004), where a third party was attempting to obtain some claims material of a party opponent. The moving party argued that the rationale in Richey did not apply because there was no search for statements by the insured per se, but, for conclusions that the claims supervisor had made. In response, the Strack court reasoned that

> As our Supreme Court held in Richey it is essential that an insured be allowed to make a full statement to its insurer pertaining to an occurrence without the fear that the statement will be used by a third party. The fact that this report contains conclusions by a Strack supervisor that are based on statements by a Strack employee is of no moment. The privilege applies to communications between the insured and its agents to the insurer.

Id. at 674.

In light of the above, we conclude that the trial court did not err in applying the rationale in Richey in these circumstances and quashing the subpoenas that Steinrock had filed in an attempt to obtain the claims file information from McCulloch's insurance carrier. Thus, Steinrock's claim fails.

## II. Defamation

10

Steinrock argues that the trial court erred when it found in McCulloch's favor on the defamation claim. Steinrock maintains that judgment should have been entered in its favor because the evidence established that McCulloch made defamatory statements that Steinrock was allegedly going out of business.

In resolving this issue, we note that

> A defamatory communication is said to either be "defamatory per se" or "defamatory per quod." Id. "A communication is defamatory per se if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct.. . . . . To maintain an action for defamation per se the plaintiff must demonstrate (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages.

Schrader v. Eli Lilly and Co., 639 N.E.2d 258, 261 (Ind. 1994).

As discussed above, the record reflects that McCulloch made a telephone call inquiring as to whether Steinrock was still in business. Hunter, the receptionist who answered the call, received confirmation from her boss and one of Steinrock's employees that the company was still operating. Hunter informed McCulloch of this fact and terminated the call. Steinrock's owner testified that none of his customers were informed of the phone call, he did not lose any business because of the phone call, and he did not have to explain the telephone conversation to any colleague or customer.

That being said, the telephone call about which Steinrock complains does not satisfy the definition of defamation. An inquiry about whether a company is still in business does not impute misconduct. The record does not suggest that McCulloch said anything disparaging to Hunter when he simply asked if the business remained open.

11

McCulloch made no other comments with regard to that inquiry and none were repeated or conveyed to customers, colleagues, or anyone else. Finally, Steinrock's owner conceded that it had not sustained any business or customer loss as a result of the telephone call. As a result, we conclude that the trial court properly entered judgment for McCulloch on the defamation claim.

### III. Breach of Contract

Steinrock claims that the trial court erred in finding that it had materially breached the contract. As a result, Steinrock maintains that there should not have been an offset of the $20,000 that had been withheld.

In resolving this issue, we first note that Trial Rule 52(A) provides that

On appeal of claims tried by the court without a jury, or with an advisory jury, at law or equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

A judgment is clearly erroneous if it is unsupported by the findings and conclusions, and if the record lacks any evidence to support them. Ind.-Am Water Co., Inc. v. Town of Seelyville, 698 N.E.2d 1255, 1259 (Ind. Ct. App. 1998).

Notwithstanding Steinrock's claims, the overwhelming evidence presented at trial demonstrated that Steinrock breached the contract by putting in defective tiles and performing the installation in an un-workmanlike manner. Steinrock admitted to many of the deficiencies and acknowledged that they needed repair and that some of the tiles required replacement.

12

As noted above, the work took nearly four months to complete. McCulloch testified that while the work was being performed and immediately thereafter, deficiencies were noticed that included cracked, chipped, warped, cupped and/or broken tiles. Many tiles had fallen from the roof, mortar could be seen falling out of hip and ridge tiles, and the roof began to leak.

Arnold, the expert that McCulloch had hired, testified that the entire roof had to be stripped and redone to completely repair the defective conditions. And Spalding, the expert that both parties agreed upon, testified about the multitude of deficiencies and stated that the repairs needed to be made to bring the roof to an acceptable standard. Although Spalding did not conclude that the entire roof had to be removed, he noted that the cost of repairs would cost approximately $78,059.

In essence, every person who inspected the roof stated that many of the tiles used were deficient or improperly installed, and that mortar was falling from the hip and ridge tiles when it should not have.

Also, notwithstanding Steinrock's testimony regarding the low cost of repairs and the alleged short amount of time that it would take to effect the repairs, the evidence demonstrated that it took five crew members over four months to complete the work. And assuming that each member worked a forty hour week over a 4 1/2 month period, a total of 3,400 man hours would be spent on the project. The trial court could reasonably conclude from this evidence that it is not believable that all of the work could be completed in eighty hours.

13

In fact, Spalding estimated that there would be 1,062 field labor hours for the hip and ridge joints alone. Indeed, all of the parties testified that the repair work would be very tedious and time consuming. Steinrock's estimate of eighty hours to do this work is so out of line with the work originally done on the house, that the trial court could reasonably conclude that this evidence was simply not credible.

That said, the trial court took the Merrick-Kemper estimate of $78,059.00 less the unpaid balance of the contract with Steinrock of $20,096.53. And the trial judge had ample evidence to support her findings of fact on this issue. Moreover, the award to McCulloch, which was the cost of the repairs less what was owed under the contract, is in accord with the law on this issue.

To illustrate, in Snellenbarger v. Kunz, 798 N.E.2d 523 (Ind. App. 2003), the circumstances demonstrated that work under a contract had not been performed in a workmanlike manner. The trial court awarded judgment to the property owner which was the difference between the contract price and the amount that the property owner had to pay others to complete the job, and work that was not done correctly by carpenter. We upheld the trial court's judgment and the award of damages. Id. at 528. The trial court in Snellenbager used the same method in the calculation of damages as it did in this case.

In sum, there was overwhelming evidence presented to the trial court that enabled it to find a breach of contract and award judgment to McCulloch on his counter claim of the original contract price less the cost of repairs.

IV. Damage Award

14

Notwithstanding our discussion above, Steinrock argues that the trial court should have limited McCulloch's damages to the difference in fair market value and applied the provisions of Indiana Code section 32-27-1-14,[2] the Home Improvement Warranties statute, to the circumstances here. Steinrock asserts that because McCulloch did not introduce any evidence of fair market value, the damage award must be set aside.

In resolving this issue, we first note that Steinrock has not preserved this issue for appellate review because it did not present a warranty defense or "fair market value" defense during discovery or at trial. Indeed, Steinrock first raised this issue in its post-trial memorandum. However, there was no evidence presented at trial regarding any

----

[2] Our Home Improvement Warranties statute, Indiana Code section 32-27-1-14, provides that

 (a) If a remodeler breaches a warranty set forth in section 12 of this chapter, the owner may bring an action against the remodeler for:

  (1) damages arising from the breach; or

  (2) specific performance.

    (b) If damages are awarded for a breach of a warranty set forth in section 12 of this chapter, the award may not be for more than:

  (1) the actual damages that are:

    (A) necessary to effect repair of the defect that is the cause of the breach; or

    (B) the difference between the value of the home without the defect and the home with the defect;

  (2) the reasonably foreseeable consequential damages arising from the defect covered by the warranty; and

  (3) attorney's fees, if those fees are provided for in the written contract between the parties.

"breach of warranty or fair market value of the property" theory. In short, this was not an issue that was properly before the trial court and is not the law of the case. See Van Bibber v. Norris, Ind., 419 N.E.2d 115, 126 (Ind. 1981) (observing that raising an issue for the first time post-trial is not permitted).

Waiver notwithstanding, even assuming the trial court should have entertained the theory that Indiana Code section 32-27-1-14 applies here, the result would still be the same. Pursuant to this statue and the provisions of a companion statute, Indiana Code section 32-27-1-15, if damages are awarded for breach of warranty, actual damages that are necessary to effect repair of the defect that is the cause of the breach are properly awarded pursuant to Indiana Code section 32-27-1-15(1) (A).

Therefore, even assuming that the above statutes applied in this instance, the actual damages necessary to effect repair of the defect are properly awardable. And that is precisely what the trial judge did in this case, which was the cost of repair less the amount owed on the original contract.

CONCLUSION

In light of our discussion above, we conclude that the trial court properly excluded certain discovery and the potential testimony of an insurance agent who inspected the work. The trial court also properly found for McCulloch on his breach of contract claim against Steinrock, and on Steinrock's claim against him for defamation. Finally, we conclude that the trial court's damage award was proper.

16

The judgment of the trial court is affirmed.

DARDEN, J., and BAILEY, J., concur.